Negotiated Agreement

between the

Clark County School District

and the

Clark County Education Association

 

**2018-2021**

**This page left blank.**

**TABLE OF CONTENTS**

Article 1 - Definitions ........................................................................................................ 6

Article 2 - Recognition ...................................................................................................... 7

Article 3 - Impasse Proceedings ....................................................................................... 7

Article 4 - Grievance and Arbitration Procedures ............................................................. 7

Article 5 - Association President ...................................................................................... 12

Article 6 - Mileage Payments .......................................................................................... 13

Article 7 - Use of Facilities ............................................................................................. 13

Article 8 - Dues Deduction .............................................................................................. 14

Article 9 - Request for Information ................................................................................... 15

Article 10 - Teacher Advisory Council ............................................................................. 15

Article 11 - Teacher Facilities ......................................................................................... 17

Article 12 - Teacher Protection from Assaults and/or Battery ......................................... 19

Article 13 - Qualifications for Teachers ........................................................................... 20

Article 14 - Teacher Personnel Files .............................................................................. 21

Article 15 - Medical Services .......................................................................................... 22

Article 16 - Extended Leaves of Absence ...................................................................... 22

Article 17 - Temporary Leaves of Absence .................................................................... 23

Article 18 - Sick Leave ................................................................................................... 25

Article 19 - Bereavement Leave ..................................................................................... 30

Article 20 - Personal Leave ........................................................................................... 30

Article 21 - Work Year ................................................................................................... 31

Article 22 - Hours of Work ............................................................................................. 33

Article 23 - No Strikes/Work Stoppages ........................................................................ 35

Article 24 - General Savings Clause .............................................................................. 35

Article 25 - Teachers' Contract of Employment ............................................................. 35

Article 26 - Professional Compensation ......................................................................... 35

Article 27 - Longevity Pay .............................................................................................. 46

Article 28 - Teacher Health Trust............................................................................ 46

Article 29 - Public Employees Retirement System .................................................. 49

Article 30 - Reduction in Force ............................................................................... 49

Article 31 - Preparation Periods.............................................................................. 51

Article 32 - Safety .................................................................................................. 52

Article 33 - Equitable Treatment ............................................................................. 52

Article 34 - Instructional Discretion ......................................................................... 53

Article 35 - Transfer ............................................................................................... 53

Article 36 - Disciplinary Procedures........................................................................ 58

Article 37 - Extra Pay for Extra Duty Schedule........................................................ 60

Article 38 - Waiver of Contract Provisions .............................................................. 65

Article 39 – Empowerment Schools......................................................................... 66

Article 40 – Term of Agreement……………………………………………………..68

Article 41 - New Article  ......................................................................................... 68

Article 42 - New Article – Cooperation and Economic Negotiations…………………………………..68

**PREAMBLE**

This Agreement is made and entered into by and between the Clark County School District in the City of Las Vegas, County of Clark, in the State of Nevada and the Clark County Education Association effective September 13, 2018.

WHEREAS, the Clark County Board of School Trustees in the City of Las Vegas, County of Clark, State of Nevada, and the Clark County Education Association, the parties of this Agreement recognize and declare that providing the highest standards of education for the children of the District is their mutual aim and that the character of such education depends predominantly upon the quality and morale of the teaching staff, and

WHEREAS, the Board of School trustees is the duly elected governing body of the District, with the powers as delegated by the laws of the State of Nevada, to formulate programs and policies for the operations of the District to be directed through their designated representative, the superintendent of schools, and

WHEREAS, the members of the teaching profession are particularly qualified to assist in the improvement of educational standards, and

WHEREAS, a free and open exchange of views is desirable and necessary by and between the parties hereto in their efforts to negotiate in good faith and with respect to wages, hours, and conditions of employment, and

WHEREAS, members of the teaching staff in the District have the right to join, or not join, any organization for their professional or economic improvements:

NOW THEREFORE IT IS AGREED:

**ARTICLE 1**
**DEFINITIONS**

1-1     The term "NRS 288," as used in this Agreement, shall refer to the Statutes of Nevada enacted by the 1969 Session of the Nevada Legislature and revised by subsequent sessions of the Nevada Legislature.

1-2     The term "Teachers," as used in this Agreement, shall refer to all licensed staff members eligible for membership in the Clark County Education Association.

1-3     The term "School Trustees," as used in this Agreement, shall mean the Board of School Trustees of the Clark County School District, and is the entity known as the Local Government Employer in NRS 288.060.

1-4     The term "Association," as used in this Agreement, shall mean the Clark County Education Association and is the entity known as the Employee Organization in NRS 288.040.

1-5     The term "School District," as used in this Agreement, shall mean the Clark County School District.

1-6     The term "Superintendent," as used in this Agreement, shall mean the Superintendent of Schools of the Clark County School District or his/her designated representative.

1-7     The terms "School Trustees" and "Association" shall include authorized officers, representatives, and agents.   Despite references herein to "School Trustees" and "Association," as such, each reserves the right to act hereunder by committee or designated representative.

1-8     The term "School Year" shall be as defined in NRS 388.080 which states:  "The public school year shall commence on the first day of July and shall end on the last day of June."  The term "Contracted School Year," as used in this Agreement, shall mean the period of time of the first contracted day in the fall until the beginning of the next contracted school year.

1-9     The term "Board" means the Local Government Employee-Management Relations Board (EMRB), as provided in NRS 288.030.

1-10    The term "Agreement" refers to the name of this document, being the Professional Negotiation Agreement between the Clark County School District and the Clark County Education Association.

1-11    The term "Immediate Family" pertaining to the use of sick leave shall mean mother, father, husband, wife, son, daughter, brother, sister, mother-in-law, father-in-law, foster child, step child, step parent, or any person living in the immediate household of the employee.  The term "Immediate Family" pertaining to the use of bereavement leave shall include those persons named above or any person living in the immediate household of the employee and also grandmother, grandfather, grandchild, brother-in-law, sister–in–law, son-in-law, daughter-in-law, foster parent, aunt and uncle.

1-12    The term "Personnel Officer," as used in this Agreement, refers to the Superintendent's designee.

1-13    The term "Day" shall be defined as any day in which a covered employee is required to be and is present on the job.

1-14      The term "Trust," as used in this Agreement, shall mean the Teachers Health Trust as established by the Clark County Education Association.

1-15      The term "Adjusted Hire Date", as used in this Agreement, shall mean the original hire date less any breaks in service as a result of resignation or leave of absence.

1-16      The Contract Maintenance Committee shall be a committee established and staffed by the parties to meet regularly and to discuss appropriate issues.  The Committee shall meet at least four times annually on a quarterly basis.


## ARTICLE 2
## RECOGNITION

2-1      Excluding the Superintendent and employees paid on the Unified Administrative Salary Schedule, the School Trustees recognize the Association as the exclusive representative of all licensed personnel employed or to be employed by the School District.

2-2      It is acknowledged and understood by the parties hereto that recognition was and is granted in accordance with NRS 288.  Recognition is granted only so long as the Association complies with the provisions of NRS 288, and it may only be withdrawn during the term of this Agreement in accordance with NRS 288.

2-3      All rights and privileges granted to the Association under the provisions of this Agreement shall be for the exclusive use of the Association subject to the exception of NRS 288.140.


## ARTICLE 3
## IMPASSE PROCEEDINGS

3-1      It is understood, if the parties fail to reach agreement as a result of direct negotiations, impasse proceedings may be invoked by either party in accordance with the provisions of NRS 288.


## ARTICLE 4
## GRIEVANCE AND ARBITRATION PROCEDURE

4-1      A grievance is defined as any dispute which arises regarding an interpretation, application or alleged violation of any of the provisions of this Agreement.  A grievance may be filed by an employee of the School District covered by this Agreement, or by the Association. The Association may also file a grievance on behalf of a class of employees of the School District covered by this Agreement.  A grievance shall not include any matter or action taken by the School Trustees, or any of its agents, for which relief is granted by the statutes of Nevada.  No precedent shall be set between the District and the Association as a result of a grievance filed by an individual unless the Association submits the matter to Step Three, Arbitration.

4-2      The provisions of this Article are for the purpose of setting forth the full grievance procedure including the time limits relating to these procedures which may culminate in arbitration.

4-3      STEP ONE:  INFORMAL DISCUSSION/MEDIATION

(a)    Both parties encourage employees covered by this Agreement to resolve their problems with their principal or supervisor whenever possible.  The provisions of this Article are not intended to preclude a teacher with a potential grievance from informally discussing the problem with his/her immediate supervisor prior to filing a formal grievance although such discussions are not part of the formal grievance procedure.  In addition, utilization of the Step One discussion/mediation shall not be used against the employee.  Further, the employee does so without waiving the due process rights stipulated under the CBA.

(b)    If a teacher requests an informal discussion or mediation with the principal of the school, or the department director if the assignment is not school-based, concerning the subject matter of a potential grievance, such informal discussions or mediation will be held within twenty (20) days after the affected teacher or the Association first knew of the act or condition upon which the potential grievance is based.  If the informal discussion or mediation does not occur within the twenty (20) day time limit, a grievance may be processed to the Pre-grievance Resolution process as set forth in Article 4-4 below, or to Step Two as set forth in Article 4-5 below.

(c)    It is understood and agreed that all aspects of such informal discussions, if any, which take place shall have no bearing or precedential effect on the resolution of that grievance or any similar grievance filed in accordance with this Article.

(d)    If a grievance is resolved as a result of an informal discussion, the principal or the grievant may reduce that resolution to writing prior to the termination of the time limits for filing a formal grievance.  The absence of such a written resolution executed by both parties shall serve as notice to the grievant involved to file a formal grievance if that teacher so desires.

(e)    Such informal discussions shall not modify the time limits set forth in Step Two of the formal grievance procedure.

(f)    Either party to this Agreement may request mediation.  Mediation may be utilized when both parties to the dispute voluntarily agree to participate to resolve disputes.  Timelines are not suspended pending mediation, except with the written agreement of both parties.  It is understood that the parties to the dispute are the District and the Association.

4-4      All grievances shall be processed as follows:

Pre-grievance Resolution

(a)    If the grievance is not resolved at Step One or if the grievance was not presented at Step One, the Association may submit in writing a proposal of resolution of the potential grievance to the Associate Superintendent, Human Resources Division, or the Superintendent's designee before the Association files a formal written grievance.

(b)    The proposal of resolution submitted to the Associate Superintendent, Human Resources Division, or the Superintendent's designee will include the violation of policy and/or contract and the requested resolution, along with a written narrative of the issue(s) and the document(s) involved.

(c)    The traditional timeline to grieve, as outlined in Article 4-5 (a) below, will be suspended during the Pre-grievance Resolution process, provided that the proposal

of resolution was submitted prior to the expiration of the traditional grievance timeline. The timeline will resume if and when either party terminates the Pre-grievance Resolution process in writing.

(d) All aspects of such informal discussions, if any, which take place shall have no bearing or precedential effect on the resolution of that grievance or any other grievance filed in accordance with this Article.

(e) In the event the Pre-grievance Resolution is denied or unresolved by either party in writing, the grievant may submit the matter to Step Two of the grievance procedure in accordance with the timelines provided in Article 4-5 below.

(f) The submission of a Pre-grievance Resolution in no way guarantees that the School District will grant the requested resolution.

4-5       STEP TWO:  SCHOOL DISTRICT

(a) If the grievance is not resolved at Step One, the grievant may submit in writing the unresolved grievance to the Associate Superintendent, Human Resources Division or the Superintendent's designee not later than thirty (30) days after the grievant first knew of the act or condition upon which the grievance is based. An authorized signature on a United States postal "return receipt" or dated hand delivery receipt shall serve as proof of submission.

(b) In the event a grievance is submitted to Step Two in a timely manner, the Associate Superintendent, Human Resources Division, or the Superintendent's designee shall schedule a meeting with the grievant within seven (7) days to be held no later than twenty (20) days after receipt of the grievance unless timelines have been waived in writing.

(c) In the event a grievance is not resolved at this meeting, the Associate Superintendent, Human Resources Division, or the Superintendent's designee shall, within ten (10) days after the meeting, submit a written response to the grievance, to the individual and to the Association. Any resolution of the grievance in favor of the grievant shall be in writing and copies forwarded to both the affected employee and the Association. If the Associate Superintendent, Human Resources Division, or the Superintendent's designee fails to respond within ten (10) days as referred to in this paragraph or if a mutually agreed upon time extension is not agreed upon, the grievance shall be deemed in favor of the grievant.

(d) If a grievance is either denied, or not resolved at Step Two of the grievance procedure, the grievance shall be deemed withdrawn with prejudice unless timely filed at Step Three, Expedited Arbitration, in accordance with the provisions of Step Three below.

4-6       STEP THREE:  EXPEDITED ARBITRATION

(a) In the event a grievance is not resolved during the Pre-grievance Resolution process, if any, or at Step Two of the grievance procedure, only the Association, not later than twenty (20) days after the expiration of the time limit set forth in Article 4-5(c) above, may request arbitration of the unresolved grievance in accordance with the provisions set forth below. A request for arbitration shall be made by delivering to the Associate Superintendent, Human Resources Division, or the Superintendent's designee written notice of the intent to arbitrate. A United States postal "return receipt" or dated hand delivery receipt shall serve as proof of delivery.

The Association agrees that it will not delegate to anyone the right to arbitrate. This shall not be construed to mean that the Association may not determine the identity of its representative at such arbitrations.

It is agreed that the American Arbitration Association will provide full service administered arbitration under the American Arbitration Association's Labor Arbitration Rules.

(b)   The panel of arbitrators in use at the end of the current school year shall continue in effect unless the District and the Association agree to change the number of arbitrators. If they are unable to agree on a new number of arbitrators to serve on the panel, the number shall be nine (9). If the District and the Association cannot agree on the new members of the panel, then the American Arbitration Association (AAA) will be asked to submit a list of twenty-seven (27) arbitrators from which the parties shall strike alternately until the appropriate number of arbitrators has been selected for the panel. By September 30th of each year, each party may remove one (1) arbitrator from the panel. The replacement(s) shall be selected in accordance with the procedure set forth above. All arbitrators must be AAA certified arbitrators.

4-7      The arbitrator shall not have the authority to modify, amend, alter, add to, or subtract from any provision of this Agreement. An arbitrator in the absence of the express written agreement of the parties shall have no authority to rule on any dispute between the parties other than one which qualifies as a grievance as defined in 4-1.

4-8      The arbitrator's decision shall be submitted in writing within thirty (30) school days of the close of arbitration or submission of post hearing briefs, whichever comes later, to all parties and shall be final and binding on all parties to this Agreement unless the arbitrator exceeds the powers specified herein, or is guilty of procedural error prejudicing the rights of either party as defined by federal labor law decisions.

4-9      The expenses of arbitration, including the arbitrator's fee/costs and expenses, and the cost of the arbitrator's transcript, shall be borne equally by the School District and the Association. However, all other expenses incurred by either party in the preparation or presentation of its case are to be borne solely by the party incurring such expenses. It is understood and agreed that only the Association has the right to request arbitration and that the Association shall be responsible for its share of the costs as agreed above for any arbitration requested by the Association.

4-10     No reprisals of any kind will be taken by the school trustees or by any member of the administration against any employee because of filing a grievance or because they participated in an orderly manner in the grievance procedure on behalf of the grievant and/or the Association. This provision shall not be construed as an agreement by the School District to pay the grievant or the association representative or any person present on their behalf for the time spent in processing a grievance in accordance with the provisions of this Article. It may occur during or outside the school day. In the event a grievance meeting is scheduled and held during the school day, those employees covered by this Agreement who participate in such a meeting may do so without loss of pay subject to the limitations contained in Article 17-1-2.

4-11     No provision of this Article shall be construed to prevent any individual employee covered by this Agreement from discussing any problem, dispute, or even a grievance as defined herein with any supervisor outside the presence of a representative of the Association. However, such discussion shall not relieve any party from compliance with other provisions of this Article in the absence of an express written waiver of such provisions.

4-12    The parties hereby recognize the existence of policies and administrative regulations of the School District to which the employees covered by this Agreement are bound, and which are subject to change by the school trustees of the School District.  The parties agree that any disputes arising under the application and/or administration of such policies or regulations relating to subject matter not covered by the provisions of this Agreement shall be processed beginning with Step Two of the grievance procedure set forth herein.  If the dispute is unresolved after Step Two of the grievance procedure, the dispute may only be processed as follows:

    4-12-1    The person initiating the dispute may refer the dispute to the Board of School Trustees and must also inform the immediate supervisor and the Associate Superintendent, Human Resources Division, and/or the Superintendent's designee.  When a dispute is so referred, the board or a committee designated by the board shall meet to informally discuss the subject matter of the dispute with the grievant and with representatives of the Association requested to be present by the grievant.

    4-12-2    The Superintendent or designee shall prepare a review of the case for the Board of School Trustees and the committee designated by the board if a committee is so designated.

    4-12-3    The Board of School Trustees or a committee designated by the board shall make a decision regarding the dispute as to the applicability or administration of district policies or regulations and communicate its decision in writing within thirty (30) days after the final meeting on the dispute.

4-13    It is the intention of the parties that grievances not resolved before the summer recess be resolved as quickly as is reasonably possible.  Toward this goal, the parties agree that they will make a reasonable effort to conclude pending grievances before the opening of school in August.

4-14    In the event an employee(s) covered under this Agreement exercises the right to individually process a grievance without assistance from the Association, the District shall provide the Association:

    4-14-1    A written copy of the grievance, the name of the grievant(s) to include the work site and the name of the grievant's appropriate administrator.

    4-14-2    An opportunity to be present and to submit the Association's position at any meeting with the grievant(s) and at any grievance hearings, suspension hearings, evidentiary hearings, arbitration hearings, or any other meetings.

    4-14-3    A written copy of the resolution of the grievance or arbitration.

4-15    A fund of three thousand dollars ($3,000.00) shall be earmarked and designated for the costs of specialized arbitration proceedings.  The District, in its sole discretion,

shall have the ability to authorize disbursements from the fund which has been earmarked and designated under this provision.

4-16    A joint committee of District and Association representatives shall be formed to discuss the creation and implementation of a Grievance Review Committee.

**ARTICLE 5**
**ASSOCIATION PRESIDENT**

5-1     Upon written request from the Association's Executive Board, the District shall grant the president and vice president of the Association a two (2) year leave of absence without pay during the president's and vice president's term of office for professional and educational development, participation in community projects, visitations of schools and other Association business.

5-2     The president's and vice president's leave of absence shall commence with the beginning of the contract year and conclude at the end of the same contract year.  The Association agrees to reimburse the School District on a current basis for the Public Employees Retirement System (PERS) contribution the District makes on behalf of the president and vice president.

5-3     If the president or vice president serves only one term in office (two years or less), the District agrees to return the president or vice president to the same teaching position held when the president's or vice president's leave was granted.  If the program has been reassigned to a new location, then the president or vice president will return to the same location.  If the president or vice president serves two or more terms in office, the District is not obligated to return the president or vice president to the same teaching position held when the leave was granted, unless the former position is vacant.  The District agrees that if that position is filled, the District will return the outgoing president or vice president to as near an equivalent teaching position as the position held when the leave of absence was granted.

5-4     The president or vice president of the Association or their designee from NEA, NSEA, or CCEA staff shall be allowed to visit any school in the District upon prior notification of the principal of the particular school involved.  Arrangements for the visit will be made prior to the actual visit with the principal, or in his/her absence, the acting administrator.  The president, vice president, or designee shall confer with the principal or his/her designee upon arrival at the school to facilitate the purpose of the visit.  Such visits are permitted for the sole purpose to view the educational program at that school or to assist a member and/or members of the staff at that school who have requested such assistance.  Such visits are not to be used to campaign in any manner, either directly or indirectly, against School District representatives or the school trustees.  The purpose of the visit must relate to the school being visited.

5-5     Only those vendors who are designated by the Association as Member Benefit Specialists may meet with teachers on school campuses under the following conditions:

        5-5-1   Arrangements for the visit will be made prior to the actual visit with the principal or his/her designee.

        5-5-2   Attendance at the meeting will be voluntary, and communications about the meeting must clearly indicate that attendance is voluntary.

        5-5-3   The meeting must take place in a separately-designated area, such as an available classroom, so that teachers who choose not to attend are not imposed upon in common areas such as teachers' lounges and teachers' workrooms.  The school will work cooperatively with the Association to designate such an area.

5-5-4     With the exception noted in Article 28-8, a teacher can attend the meeting only during his/her duty-free lunch period or before or after the contract day; teachers may not attend the meeting during their preparation periods.

No other vendors, except those whose presence on the school campus is a result of the collective bargaining agreement, shall be allowed on any campus during the school year.

Nothing in these provisions shall prevent or prohibit a district employee from inviting an individual for personal or business reasons, subject to the permission of the principal, to meet with that district employee at school facilities so long as such invitation does not interfere with the district employee's duties or good order and discipline.  In addition, nothing in these provisions shall prevent or prohibit the District from allowing a vendor on campus in special circumstances if approved by the Associate Superintendent, Human Resources Division; in such cases, however, the District will give prior notice of the visit to the Association.

Upon violation of the intent of this Article 5-5, the District shall notify the Association of its intent to sunset this provision at the end of the current school year.

5-6     The Association agrees that the teacher assigned to replace the Association president or vice president on leave of absence shall be transferred to another teaching position upon the return of the president or vice president unless the teacher and the principal mutually agree to the assignment to a vacancy at the school for which the teacher is licensed and qualified.  The teacher assigned to replace the Association president or vice president shall be notified in writing by the District and the Association at the time of assignment of the contents of this Article.


## ARTICLE 6
## MILEAGE PAYMENTS

6-1     Employees covered by this Agreement shall be granted mileage in accordance with the School District regulation entitled "Travel for District Employees."


## ARTICLE 7
## USE OF FACILITIES

7-1     The Association shall have the use of school mailboxes and the inter-school mail service for the distribution of non-defamatory material initiated by the Association.  Copies of all materials shall be given to the building principal.  The material will be clearly identified and the Association accepts the liability for such material and therefore agrees to hold the District, its employees and agents, harmless from all claims, demands, losses, liability, cost or expenses of any nature, to include attorney's fees, arising from the distribution of Association material using the school mail service.  The foregoing "hold harmless" clause shall not apply to grievances between the Association and the District.  If the use extended herein is misused by the Association or any of its designated representatives, it may be immediately revoked by the Superintendent.  District teachers shall be permitted use of School District mail services for district-related business.

7-2     Use of School District bulletin boards as described below shall be subject to the same conditions set forth in 7-1 above for the use of the school mail service.

7-2-1   The Association shall have the use of faculty bulletin boards for posting of non-defamatory materials.

7-2-2   The Association, the Teachers' Health Trust, and the CCEA Community Foundation shall have the use of the District's electronic bulletin board/messaging system through InterAct for posting of non-defamatory materials.  In addition, there shall be a link through InterAct to the Association's website.  This link may not be used for purposes of soliciting membership. Messages, materials and announcements posted on InterAct must be approved in advance by the Associate Superintendent, Human Resources Division, or his/her designee.

7-3   From the effective date of this Agreement to its termination, the Association shall be allowed the use of school buildings and premises for association meetings and activities on regular school days as long as arrangements have been made with the principal of the building.  Such activities shall not conflict with any regular or special educational activities and where such use shall not involve additional or extra custodial services and/or other unusual expenses to the School District.  Use of the buildings on other than school days requires the approval of the Superintendent in addition to the school principal.  Any added expense resulting from the Association use shall be paid by the Association.  If the privilege extended herein is misused by the Association or any of its designated representatives, it may be immediately revoked by the Superintendent.   Individual teachers will not be prohibited from the responsible use of the school facilities.

7-4   Any dispute arising from the revocation of privileges granted under this Article shall be resolved in an expedited manner.

**ARTICLE 8**
**DUES DEDUCTION**

8-1   The school trustees agree to deduct dues from the salaries of the employees covered by this Agreement exclusively for the Association and its affiliates, if any.  These monies shall be transmitted promptly to the Clark County Education Association.  All requests for such deductions must be in accordance with NRS 608.110.

8-2   The Association will certify to the School Trustees in writing the current rate of membership dues.  The School Trustees will be notified of any change in the rate of membership dues thirty (30) days prior to the effective date of such change.

8-3   Deductions referred to in Section 8-1 above will be made in equal installments each pay period during the year.

8-4   Any teacher desiring to have the School District discontinue deductions previously authorized must notify the Association in writing between July 1 and July 15 of each year for the next school year's dues and the Association will notify the District in writing to discontinue the employee's deduction.

8-5   Upon termination of employment with the District of any employee, the remaining amount of dues for the Association in Section 8-2 above will be deducted from the employee's final check.

8-6   It is recognized by the parties that the School District's willingness to deduct dues is solely a ministerial function on behalf of and for the convenience of the Association.  As such, the District is not a party to any agreement between the Association and its members regarding the periodic deduction of dues.  The Association, therefore, agrees to hold the School District harmless and to reimburse the School District for any and all costs, including legal fees it may incur in relation to any deductions made at the direction of the Association and contrary to the instructions received from the individual teacher.  The parties agree that if there are not sufficient employee salary funds for dues collection due

to an employee's wage garnishment, the District is not liable for failure to collect such dues so long as the funds are not available.

## ARTICLE 9
## REQUEST FOR INFORMATION

9-1     The School District and the Association shall make all documents, excluding work product, which are relevant to any grievance, arbitration, or negotiations available to the requesting party within a reasonable time after it is requested.  In the event documents containing the requested information are not available, the School District and the Association shall permit reasonable access to their files so that the Association or School District may itself obtain the needed information.

It is recognized that the Family Educational Rights and Privacy Act (FERPA) may limit the availability of student–related records and statements.

## ARTICLE 10
## TEACHER ADVISORY COUNCIL

10-1    A Teacher Advisory Council shall be established in each school or central work location where the majority of the faculty desires such a council.  Time for discussion relating to the desire of the faculty to have a Teacher Advisory Council shall be provided each faculty at the orientation sessions and/or faculty meetings routinely scheduled at the start of the school year.  The principal's presence at or participation in said discussion is not required.  The Teacher Advisory Council shall be allowed to meet without the presence of the building principal or designee.

10-1-1    In the case of itinerant specialists, e.g., speech pathologists, psychologists, occupational therapists and physical therapists, itinerant employees may elect representatives from each region to meet with the appropriate district or region administrator for the specialty area.

10-2    In a school or central work location, which chooses to have a Teacher Advisory Council, the election of the Teacher Advisory Council shall be held no later than December 15.  Other than the election or designation of a replacement due to resignation, there shall be no more than one election of the Teacher Advisory Council in the school year.

If a new principal is appointed to a school during the school year, the staff may choose to have a Teacher Advisory Council election within fifteen (15) days of the new principal's placement.

10-3    If a majority of the teachers in a school choose not to elect a Teacher Advisory Council, the teachers may elect one of their number to perform the normal functions of the Teacher Advisory Council.

10-4    The principal or administrator of a school or central work location with a Teacher Advisory Council and the council shall meet at the request of either party to discuss school operations.  Although they may discuss matters covered by the Agreement, they are not to discuss grievances filed pursuant to Article 4, Grievance and Arbitration Procedure, nor take any action contrary to this Agreement.  Such grievances are to be handled in the manner set forth in said Article 4.

10-5    The Teacher Advisory Council shall seek the following objectives:

♦   Improve the morale of the professional staff;

♦ Apprise the principal of actual or potential problems involving the professional staff of the school;

♦ Secure the maximum productive and constructive involvement of members of the professional staff in the prime goal of the school, namely, the education of the students enrolled there;

♦ Improve communications between the principal and members of the professional staff; and

♦ Provide input on the school's budget.

♦ At the beginning of the school year, principals shall work with TAC to develop an equitable plan of assigning personnel in emergency situations when a substitute is not available. Special consideration will be given to those specialists whose programs are cancelled due to emergency situations.

10-6     The Teacher Advisory Council may not serve as a committee for entertainment, social, fundraising nor any similar activity in the building.

10-7     In allocating school budget resources relative to supplies and materials for the classroom, the principal will consult with and seek the input of the Teacher Advisory Council. Teachers shall not be asked, expected, or encouraged to purchase classroom supplies and/or materials from their personal funds.

10-8     In addition to a Teacher Advisory Council, a pilot program for a School Governance Team may be established with mutual consent of the principal and teachers in each school or central work location. The goal is to create the most effective school for the students being served. The governance goal is a collaborative effort that empowers administrators and teachers in establishing the school priorities and deciding how the school will operate and make decisions. This pilot program will be evaluated at the end of the school year.

   10-8-1     A School Governance Team request must be signed by at least 50% of the licensed staff at that site, including the responsible administrator. The request must be submitted to the Association's President and to the District's Deputy Superintendent of Instruction.

   10-8-2     Upon approval through 10-8-1, a secret ballot vote shall be conducted by the responsible site administration and an Association representative. The School Governance Team request must receive 70% of the votes cast by licensed personnel assigned to the work site including itinerant personnel. A reasonable opportunity shall be afforded to all site personnel to participate in the voting process. The tabulation process may be observed by any interested party.

10-9     Members of the School Governance Team will be elected. The School Governance Team shall meet at least once a month.

10-10     The School Governance Team shall have the same objectives as the School Empowerment Team model, which include providing continued oversight of the school and assist in the management decisions of the school in the five autonomies: governance, budget, instruction, staffing, and time.

10-11     The parties recognize and acknowledge the importance of a positive school climate to the retention of teachers and increased student achievement. For the 2010-2011 school year, CCSD will designate funds in the amount of one hundred fifty thousand dollars ($150,000) to assess school climate.

   10-11-1     Accordingly, the parties agree to work together in good faith toward improving and maintaining positive school climates and good working conditions at worksites. The parties shall create an annual plan through the Contract

Maintenance Committee for the assessment of school climate. The results of the assessment shall be submitted to the Deputy Superintendent, Instruction Unit, for consideration. The plan shall include but not be limited to focus groups, working condition surveys, appropriate training and in-services and other strategies necessary to gather data. The annual plan should be completed in time to be considered by the beginning of the next school year. The District shall make every effort to conduct the working conditions survey during a staff development day.

10-11-2    The parties agree that data gathered as a result of the implementation of the annual plans will not be used by either party for purposes of embarrassing, discrediting or otherwise undermining the legitimate functions of the other party.

10-11-3    No data collected as a result of the surveys, focus groups, or any other data product related to the school climate assessment may be cited or used in any subsequent grievance process.

10-11-4    Based upon the analysis of the data collected, the Contract Maintenance Committee will identify and/or develop general tools for the improvement of school climate and will make these tools available to those schools identified as having priority.

10-11-5    This provision (Article 10-11) shall expire automatically at the end of the term of this Agreement, unless the parties mutually agree to incorporate it into the successor Agreement.

## ARTICLE 11
## TEACHER FACILITIES

11-1    The parties agree that the availability of functional school facilities for both students and teachers is necessary to ensure the high quality of education which is the goal of both teachers and school trustees. All future school facilities shall be designed to meet the needs of the educational program.

11-2    Within available resources, special consideration shall be given to providing space in which teachers may safely store instructional materials and supplies, and a locked space in which teachers may safely store personal belongings. Each teacher is obligated to maintain such storage areas in a neat and orderly manner. Unless the teacher refuses or fails to remove excessive or non-instructional material upon the reasonable request of the principal, no material of a teacher shall be destroyed or disposed of without the prior informed consent of the teacher.

11-2-1    Special consideration shall also be given for the provision of a teacher work area. The teacher work area shall contain adequate equipment and supplies to aid in the preparation of instructional materials and an appropriately furnished room to be used as a faculty lounge. In all future facilities or in the renovation of existing facilities, the faculty lounge shall be well lighted, well ventilated, clean and conveniently located.

11-2-2    The School District recognizes that adequate work space and equipment are necessary for specialists who render services on an itinerant basis at an educational site. The School District will not unreasonably withhold access to such work space or equipment where available. The site administrator shall make every effort to provide such space and equipment to itinerant personnel.

The parties agree that this does not require the School District to purchase and install portables or other non-permanent fixtures.

11-2-3 Access will be afforded teachers to a telephone located so as to reasonably insure privacy of conversation. All telephones within a school shall be reasonably available to teachers for conducting school business. Approval must be secured prior to using telephones located in offices of school administrators or other personnel. The District shall undertake an evaluation of telephone placement and priorities for the purpose of improving the efficiency of telephone usage by teachers. Teacher restrooms shall be provided separate from students' restrooms. Separate restrooms shall be provided for male and female teachers in all facilities unless otherwise designated by the building principal with consultation of TAC.

11-3 Employees are discouraged from bringing or retaining personal property on School District premises. The School District's obligation to indemnify an employee's loss is limited to perils (fire, lightning, explosion, windstorm, hail, smoke, vandalism, theft, and water damage) covered under the District's excess insurance policies, subject to the conditions set forth therein, site aggregates, applicable personal property insurance, and the following:

11-3-1 Personal property for which a loss is claimed must be used for essential tasks to support the employee's direct scope of work and must be listed in the declaration required in Subsection 11-3-2 below. The personal property (personal effects) of an employee necessarily worn or carried (e.g., eyeglasses, hearing aids, jewelry, dentures, clothing) onto School District premises is to be exclusively covered by the employee's personal insurance as a non-business item, and should not be included on the declaration.

11-3-2 An employee must receive supervisor authorization and maintain a declaration form itemizing personal items and corresponding business use in order to activate indemnification up to $1,000 (replacement cost) per employee occurrence.

11-3-3 Employees must provide personal property declarations to their supervisors at least semi-annually; or more frequently if so stipulated by site administrators.

11-3-4 Nondeclared items of personal property will be considered as non-business in their use and the School District's loss indemnification will be limited to the employee's personal insurance deductible up to $250.

11-3-5 For any occasioned loss, employees must submit a sworn statement to the School District within sixty (60) calendar days of the loss date in order to receive indemnification. Claim procedures outlined in the declaration form of Article 11-3-2 will apply.

11-3-6 The maximum School District indemnification amount, whether the claim is for a declared or non-declared item of personal property, for any one employee occurrence will be $1,250, including both the $1,000 limitation in Subsection 11-3-2 and the $250 limitation in Article 11-3-4.

11-3-7 Losses attributed to wear and tear, gradual deterioration, latent defect, misuse, mishandling, abuse, or mysterious/unexplained disappearance will not be considered, regardless of personal insurance applicability.

11-3-8 For purposes of this Article, personal automobiles will not be considered as personal property.

**ARTICLE 12**
**TEACHER PROTECTION FROM ASSAULTS AND/OR BATTERY**

12-1     Each principal shall develop and communicate to the faculty emergency procedures which shall include a method of rapidly communicating a need for assistance in emergency situations when a potential for physical harm is evident, or when immediate assistance is required.  Emergency procedures will also include methods for providing rapid assistance in emergency situations when a potential for physical harm to the teacher is evident.  The provisions of 12-1 shall be implemented prior to the first day of student attendance, and shall be included in faculty handbooks.  Principals of year round schools shall communicate emergency procedures annually to the faculty at an appropriate time.

12-2     When a teacher becomes aware of an actual or potential danger, or of an emergency situation, the teacher shall immediately report such danger or emergency to the teacher's immediate supervisor.  The supervisor shall immediately investigate and take appropriate action.

12-3     Any teacher involved in an assault or battery within the scope of the teacher's employment shall immediately make a written report of the circumstances thereof.  The teacher shall make supplemental written reports attaching copies of any summons, complaint, process, information, indictment, notice or demand served in connection with such assault or battery within five (5) days after having been served therewith, and report the final disposition of any such proceeding.  All reports referred to above shall be made to the teacher's principal or immediate supervisor.

12-4     Such reports shall be forwarded immediately to the school trustees through the Superintendent's office.  In the event civil or criminal proceedings are brought against the teacher, the school trustees shall comply with any written requests by the teacher for information relating to the teacher's defense in the school trustees' possession not privileged by law.

12-5     In the interest of teacher safety, the board shall cooperate with law enforcement agencies.  Supervisors shall request assistance from law enforcement agencies when warranted.

12-6     In a civil proceeding the superintendent and the School District's legal counsel shall upon request give advice and counsel to the employee involved in the assault and battery.  However, the School District's legal counsel shall not be obligated to officially represent the teacher in the civil proceedings.

12-7     If the teacher is a defendant in a civil proceeding which is within the scope of public liability coverage provided by the School District, the provisions of that policy will govern the conduct of the defense of that case.  In the event the teacher hires his/her own legal counsel in such a proceeding the School District will request its insurance attorney to cooperate with the teacher's personal attorney within the scope of available insurance coverage.

12-8     If the teacher wishes to file a criminal complaint, the superintendent or his/her designee and the administrator in charge of the school or department shall assist and cooperate with an assaulted employee in making his/her criminal complaint against either an adult or juvenile offender.  However, this shall not be construed as obligating the superintendent or any other official representative of the School District to participate as a complaining party with the assaulted employee.  The School District reaffirms its policy to do everything possible in support of a teacher who is assaulted while acting within the scope of his/her employment in accordance with School District policies and direction especially when attempting to maintain order in a school.

12-9      Employees will be provided time off without loss of pay when appearing in a court proceeding which requires the employee to testify regarding a matter related to the employee's duties.  However, monies received for a subpoena, less transportation mileage reimbursement, shall be remitted to the Clark County District Accounting Department immediately upon receipt of the monies for the subpoena.

     12-9-1      Otherwise, an employee who is required by law to appear in court as a witness may access earned personal leave, earned annual leave or may take unpaid time off as necessary for such purpose provided the employee provides the employee's administrative supervisor reasonable advance notice.

     12-9-2      Leave without loss of pay will not be provided to an employee having a personal interest or benefit from participation in the proceeding or if the proceeding is between any employee and the District.

     12-9-3      Any employee subpoenaed by an employee organization to appear at any hearing relating to labor relations matters shall not be granted leave with pay except as provided in a negotiated agreement.

     12-9-4      The district retains the right to require employees to serve as witnesses without loss of pay.

12-10      In the event civil or criminal proceedings are brought against a teacher and the teacher is cleared of said charge, all written reports, comments or reprimands concerning actions which the courts found not to have occurred, shall be removed from the teacher's personnel file.  No reference to criminal charges as described above shall be included in the personnel file.  Entries into said file as they relate to civil or criminal proceedings described above shall be limited to violations of School District policy or administrative regulations, which are known beyond a reasonable doubt to have occurred.

12-11      A teacher may use reasonable and necessary force as provided for by NRS 392.465.

12-12      The verbal abuse of a teacher by students shall not be tolerated.

**ARTICLE 13**
**QUALIFICATIONS FOR TEACHERS**

13-1      Subsequent to the effective date of this Agreement, all personnel hired as classroom teachers, for other than occupational courses, shall be required to have at least a bachelor's degree from an accredited college or university.

13-2      Unless an appropriate waiver has been granted by the Nevada State Department of Education, teachers employed by the School District shall comply with the Nevada teacher licensing requirements for the position to which they are assigned.

13-3      Teachers who are assigned to teach academic subjects not within their major or minor field of college preparation shall be evaluated based upon their performance while teaching subject areas within their major or minor areas.  However, the teacher shall be evaluated in the non-major or non-minor classes on teaching techniques exclusive of subject matter content.

13-4      It is recognized that teachers on special assignment are not administrators.

**ARTICLE 14**
**TEACHER PERSONNEL FILES**

14-1     There are two (2) personnel files maintained on each teacher: one is kept at the central office and one is kept at the school location.  These files shall not include the principal's "log."  This "log" shall be maintained solely for the principal's own personal use and shall not be used as a personnel file.  A copy of each written report, comment, reprimand, or any other document concerning a teacher which the School District places in either of the two (2) personnel files shall be provided to that teacher.  The teacher shall sign the file copy of the written report, comment, reprimand, or any other document as acknowledgment of receipt of a copy of the document.  Such signature shall not be construed as agreement to the contents of the document.

14-2     Any written response by the employee to any written report, comment, reprimand, or other document as provided for in Article 14-1 above shall also become a part of that employee's personnel file and shall remain a part of said file as long as the written report, comment, reprimand, or other document responded to remains a part of the file.  All copies of the employee's response will be countersigned by the receiving administrator or designee, and a copy of the response shall be attached to the supervisor's document.  When an employee makes a written response to any written report, comment, reprimand, or any other document, the employee's response shall be made within thirty (30) school days, except in cases where a document is the subject of a grievance or is a suspension, and shall be attached to the supervisor's document.  The thirty- day (30-day) timeline to respond to documents that are the subject of a grievance and/or suspension shall begin upon the completion of the grievance and/or suspension appeal process.  Upon written request of the teacher, a waiver of the time limits by the supervisor, not to exceed ten (10) days, shall not be unreasonably withheld.  When a copy of the supervisor's written document is forwarded to any other location, a copy of the employee's written response shall be attached.

14-3     Written reports, written comments, written reprimands, or other documents of School District origin, in the possession of the District, or to which the District has access, which have not been called to the teacher's attention in writing shall not be used to adversely affect the continued employment, transfer, salary, or assignment to extra pay for extra duty assignments.

14-3-1     Any observation, incident, or behavior that results in an unsatisfactory rating in an evaluation or a direction for change in an evaluation must be brought to the employee's attention in writing through a separate document, which shall not include the notice of investigatory meeting or notice of on-going investigation, within twenty (20) Days.

14-4     Upon request, the teacher shall be given, within a reasonable time, access to the teacher's file, excluding any pre-employment documents.  Upon request, any teacher shall be furnished a reproduction of any material in the teacher's file at a cost of ten cents per page not more than one time per year unless requested by the association.

14-5     Any time after a period of three (3) years and one (1) day from issuance, any written report, comment, reprimand, or other document, excluding evaluations, placed in any teacher's file shall be removed upon written request of that teacher.

14-6     A joint committee of District and Association representatives shall be formed to discuss the creation and implementation of a pilot program for the evaluation of licensed personnel.

## ARTICLE 15
## MEDICAL SERVICES

15-1     The School District agrees to pay the cost of periodic x-rays or other medically accepted TB tests required for School District employment when administered by the Clark County Health Department.

15-2     The School District further agrees to provide to teachers, free of charge, routine immunizations and booster vaccinations for smallpox, influenza, and diphtheria.

## ARTICLE 16
## EXTENDED LEAVES OF ABSENCE

16-1     The school trustees agree that a maximum of four (4) teachers shall, upon request, be granted a leave of absence without pay for the purpose of serving in an elected or appointed office of the Association or another Association with which it is affiliated.  To be eligible for leave the employee must have completed two (2) full years under contract with the School District.  Such leave is granted for no less than one (1) full contractual year.

16-2     A leave of absence without pay for up to two (2) years shall be granted to any teacher who joins the Peace Corps, VISTA, or National Teacher Corps, and is a full-time participant in these programs.  To be eligible for leave the teacher must have completed two (2) full years under contract with the School District. (Administrative Regulation "Peace Corps, VISTA, Teacher Corps Leave: All Employees")

16-3     A teacher may be granted a leave of absence without pay for up to two (2) years to teach in an accredited college or university.  To be eligible for leave the employee must have completed two (2) full years under contract with the School District. (Administrative Regulation "Leave for Instructional or Consultant Services:  All Employees").

16-4     Employees who are members of any Reserve Unit of the Armed Forces of the United States or the National Guard who are ordered to active duty, or who are drafted, or who enlist as an alternative to being drafted, shall be granted military leave of absence without pay, except under conditions outlined in Article I7-1-3.  Employees who voluntarily request active duty or re-enlist are not eligible for a military leave of absence.  Employees must have reported and must have begun service with the School District in fulfillment of their contract to be eligible for a military leave of absence.  (Administrative Regulation "Military Leave:  All Employees")

16-5     Upon the recommendation of the personnel officer, employee necessity leaves of absence may be granted to eligible employees by the Board of School Trustees for a period not to exceed one (1) year, where employees have identified a personal or family situation which will require the release of the employee from his/her contractual responsibilities. (Administrative Regulation "Employee Necessity Leave of Absence - All Employees")

16-6     Any teacher adopting a minor child shall receive, upon request, and with proper documentation, either sick leave or an employee necessity leave which shall commence upon receiving de facto custody of said child, or earlier, if necessary to fulfill the requirements for the adoption.

16-7     A leave of absence without pay for one (1) year (Administrative Regulation "Employee Necessity Leave of Absence - All Employees") shall be granted for the purpose of caring for a sick member of the teacher's immediate family.  Additional leave may be granted at the discretion of the school trustees.

16-8     Leaves of absence without pay for study or other professional improvement may be granted to eligible employees by the school trustees.  To be eligible for such leave the employee must have completed two (2) full years with the School District.  (Administrative Regulation "Professional Leave:  All Employees")

16-9     Other leaves of absence without pay may be granted by the school trustees.

16-10    Upon return from leave granted pursuant to paragraphs 16-1, 16-2, 16-3, 16-4 or 16-8 of this Article, a teacher shall be considered as if he or she were actively employed by the school trustees during the leave and shall be placed on the salary schedule at the level he or she would have achieved if the teacher had not been absent.  Pursuant to Paragraph 16-8, teachers must meet the requirement as outlined in the administrative regulation entitled "Professional Leave - All Employees" in order to receive increment credit on the salary schedule.  Employees while on one of the above mentioned leaves may continue to participate in the Trust program at the employee's expense.  Employees while on any of the above mentioned leaves are not eligible to receive sick leave or retirement credit.  A teacher shall not receive increment credit for time spent on a leave granted pursuant to Paragraphs 16-5, 16-6, 16-7, and 16-14 of this Article.

16-11    All benefits to which teachers were entitled at the time their leave of absence commenced including unused accumulated sick leave, shall be restored to those teachers granted leave pursuant to this Article upon his/her return, and he/she shall be assigned to the same position which was held at the time said leave commenced, if available.  If the same position is not available, the teacher shall be assigned to as near an equivalent position as is available at the time of return.   Teachers returning from such leave shall notify the School District prior to April lst of the prior school year of their intent to return.

16-12    A teacher granted adoption leave, or leave to care for a sick member of the teacher's immediate family, may request to be returned to active teaching status in writing to the Human Resources Division if the teacher wishes to return sooner than the time for which the leave was granted.  The Human Resources Division will return the teacher to active status when a vacancy occurs for which the teacher is qualified.

16-13    All leaves and extensions or renewals of leaves shall be applied for and granted in writing.

16-14    A leave of absence without pay for a period not to exceed one (1) year may be granted to any teacher who wishes to pursue employment that is directly related to his/her school assignment or certification(s).  The leave granted under this Article shall be to allow the instructor to improve practical skills and knowledge regarding current work procedures, technology, and innovations in the field for which he/she is certified to teach.  To be eligible for the "work" leave, the teacher must have completed seven (7) full years of continuous service under contract with the District.  This leave may not be extended.  This leave may be granted only once every seven (7) years.  The board may, at its discretion, limit the areas and/or the number of leaves granted annually and may deny any such leaves when determined to be detrimental to the instructional program of the District.

16-15    All of the above leaves of absence are subject to the administrative requirements regarding requests for and/or approval of such leaves which are set forth in the policies or administrative regulations of the School District.

## ARTICLE 17
## TEMPORARY LEAVES OF ABSENCE

17-1     For each separate school year covered by the term of this Agreement, teachers shall be entitled to the following temporary non-accumulated leaves of absence with regular rate of pay each school year.

17-1-1    With the approval of the principal and superintendent, leave with pay will be granted for the purpose of attending professional association meetings, conferences, delegate assemblies, conventions, training for CCEA union business, or for the purpose of visiting other schools for the sole purpose of viewing a new or unique educational program at that school.  This would include the traditional approval of at least two hundred fifty (250) school days for association representatives to attend meetings, conferences or conventions.  No individual shall be granted approval for more than ten (10) days of the two hundred fifty (250) school days allocated for association representatives.

    17-1-1-1    A licensed employee who utilizes this provision shall continue to be paid at the employee's daily rate of pay.

    17-1-1-2    No more than $100,000.00 per year of the Agreement shall be expended on release time for such licensed employees.

    17-1-1-3    The Association shall reimburse the District at the substitute daily rate of pay plus other legally required contributions as these days are used.

17-1-2    The Association shall reimburse the School District the substitute daily rate of pay for a maximum of two (2) teachers required to appear at hearings of the Local Government Employee-Management Relations Board, grievance arbitration hearings, fact-finding hearings or any court appeal relating to any such hearings which are initiated by the Association.  The Association shall reimburse the District the daily rate of pay for any additional teachers over and above the maximum of two (2) required to appear at the hearings.  The maximum of two (2) teachers required to appear shall be limited to the same two (2) teachers appearing during the duration of the hearing.  The Association shall reimburse the District the cost of providing substitutes for teachers required by the Association to appear at hearings described in this Subsection when such hearings are initiated by the District.  This provision shall not apply to any teacher subpoenaed to appear in any civil case in which that teacher has a direct interest not arising from their role as an employee of the District.

17-1-3    Members of reserve units of the Armed Forces or National Guard who are mobilized to meet local emergency situations for a period of ten (10) days or less, shall receive their regular rates of pay for this period of time.  However, they will be required to surrender payment received for military service while on active duty, exclusive of pay received for meals, transportation and lodging.  This provision applies only to emergency situations and does not apply to active duty assignments to summer encampments, schools or classes normally required of members of the National Guard or Reserve Military Units.

17-1-4    Teachers who are active members of the United States Army Reserve, the United States Naval Reserve, the United States Air Force Reserve, the United States Coast Guard Reserve, or the Nevada National Guard must be relieved from his duties, upon request, to serve under orders without loss of his regular compensation for a period of not more than fifteen (15) working days in any one (1) calendar year.  No such absence may be a part of the employee's annual vacation provided for by law.

17-1-5    A teacher who is elected to serve in a statewide elected position for no longer than 120 days shall be granted a temporary leave of absence.  At the expiration of the leave of absence, the teacher will be returned to the position the teacher

left.  Additionally, retroactive to 1995, the teacher shall return under the same provisions as outlined in Article 16-10.

17-1-6    Other leaves of absence with pay permissible by law may be granted by the school trustees.

17-1-7    If school is in session at the expiration of a temporary leave of absence, the employee may be returned to the position that the teacher left, if it is available, or to any position filled by a substitute teacher for which they are licensed.

17-1-8    In the event that a teacher testifies as a result of a lawfully issued subpoena in a criminal matter, the District shall grant a leave of absence under the above conditions; and the teacher shall reimburse the District any amount received for jury or witness fees, up to the amount of the teacher's daily rate of pay for the period of absence.  The teacher shall retain any amount received for mileage/travel expenses.

17-2    Leaves taken pursuant to Article 17-1 above shall be in addition to any sick leave to which the teacher is entitled.

## ARTICLE 18
## SICK LEAVE

18-1    Sick leave is paid leave that is granted an employee by this Agreement who is unavoidably absent because of personal illness or accident, or because of serious illness or accident in the immediate family.  The determination of whether sick leave is to be compensated or not shall be made on the basis of the provisions set forth below.

18-2    Employees who receive a paycheck for the September 25 pay distribution shall be credited with and may use up to six (6) days of sick leave at the beginning of the school year which are earned at 1.5 days per month for a maximum of ten (10) months not to exceed fifteen (15) days.  However, an employee must report to the teaching assignment as required by the contract in order to have sick leave credited.  In the event an employee does not complete the number of days required by contract, the number of sick days used in excess of the number of prorated days earned will be deducted when the final pay of the terminating employee is computed.  Employees who begin service later in the school year shall be credited with the number of days sick leave that may be earned at the rate of 1.5 days for each month of service that may be completed by the end of the school year.

18-3    Unused sick leave shall be accumulated from year to year without limit.

18-4    Absence due to sick leave will be compensated leave only to the extent the employee has earned or accrued sick leave in accordance with the above provisions.

18-5    In no case will absences due to sick leave during summer school or the summer months be paid except for those employees of schools for which the summer months constitute part of the regular school year.  In the latter situation, the employees will be paid for sick leave absences in accordance with the above provisions.

18-6    If a review of sick leave usage indicates that an employee's use of sick leave is excessive, questionable, or not in accordance with the provisions of this Article, the District shall have the right to review the usage of such leave.  The District, at the District's expense, may require an employee to have a physical examination from a physician of the District's choice from a list of qualified physicians licensed to practice in the State of Nevada or at the option of the District to submit a written certificate from a physician of the employee's

choice confirming the necessity of an absence due to illness.  The District has the right to make any inquiries that would be applicable when abuse of sick leave is suspected.

If an employee disagrees with the decision of the Associate Superintendent, Human Resources Division, or designee, the employee may appeal the decision to the Sick Leave Review Committee composed of two members appointed by CCASA, two members appointed by CCEA, two members appointed by ESEA, and two members appointed by POA or composed of five (5) members appointed by CCEA.  A majority vote of the committee members present shall determine the decision of the committee.  The decision of the committee shall be final and binding.  In the event the committee is unable to secure a majority, the decision of the Associate Superintendent or designee shall stand.  The committee's decision shall be limited to determining if the use of sick leave is appropriate.

The Sick Leave Review Committee shall hear the appeal if it is filed within twenty (20) work days after the employee is notified of the Associate Superintendent's or designee's decision.  The Sick Leave Review Committee shall meet each month and shall hear all appeals which are filed ten (10) or more days prior to the meeting of the Sick Leave Review Committee.   The employee and/or the association representative and the Associate Superintendent and/or designee will be permitted to testify and present written information to the committee.

This appeal procedure shall be in effect for the current contract and shall end with this Agreement unless it is placed in the subsequent Agreement.  The appeal procedure can be eliminated by the District or the Association after providing a thirty (30) day written notice.

18-7     Any employee who misuses sick leave shall be subject to disciplinary action.  Any dispute regarding such disciplinary action shall be subject to the provisions of Article 4, Grievance and Arbitration Procedure.

   18-7-1     Misuse of sick leave above includes universal personal leave, as provided in this paragraph, and bereavement leave taken in accordance with this Article.  The District shall have the right to request verification from employees who utilize sick leave, bereavement leave and who utilize universal personal leave in emergency situations or in which four (4) days' notice is not given.  In order to utilize a universal personal leave day, an employee must have an accrued day of sick leave to charge against the universal personal leave day.  Utilization of a universal personal leave day when an employee does not have an accrued day of sick leave constitutes abuse of sick leave, and in such instances the District has the right to make any inquiries that would be applicable, such as when an abuse of sick leave is suspected.

18-8     Upon retirement or death, a teacher who has been employed by the Clark County School District for at least ten (10) consecutive years shall be compensated for unused sick leave by the District no later than December 15 of the next fiscal year at a rate determined on an annual basis as follows:

   18-8-1     The term "Retirement" shall apply only to those teachers who terminate and receive benefits from the Public Employees Retirement System.

   18-8-2     Compensation for unused sick leave is limited to a maximum of one hundred (100) days per qualifying employee.

   18-8-3     The District shall allocate the sum of $196,197.24 to calculate the rate of pay for each unused day of sick leave.  This amount shall be increased in the same percentage amount granted as general salary increases as a result of future negotiations.

18-8-4    The annual sum as determined in Article 18-8-3 will be divided by the total number of eligible unused sick days allowed in Article 18-8-2 for all eligible employees as defined in Article 18-8-1 to yield a daily unused sick leave rate. Each eligible employee will be paid the daily unused sick leave rate for each day of eligible unused sick leave pursuant to this Article.

18-8-5    The District will provide to the Association an accounting of payments made pursuant to this Article no later than December 30 of each year.

18-9    Employees covered by this Agreement whose accumulated service time in the Nevada Public Employees Retirement System (PERS) will be at least 29 years but less than 30 years by August 31, and have been employed as a teacher for at least fifteen (15) years with the District may at their sole option elect to terminate their employment with the District and, in exchange for such termination to take place not later than August 31, except for "Y" status employees for which the final date of termination is July 31, but no earlier than at the conclusion of their current contract year, the District shall provide an incentive as follows:

18-9-1    The District will purchase up to one (1) year of PERS service, total service including such purchase not to exceed thirty (30) years, and the employee must have at least one hundred (100) days of accumulated unused sick leave as of August 31 of the year in which they intend to retire with the District.

18-9-2    Any PERS credit received pursuant to the 1/5 credit provisions of NRS 391.165 as it existed on June 30, 2007 will not be used in calculating the years of service; thus an employee who receives any PERS credit pursuant to NRS 391.165 as it existed on June 30, 2007 may exceed the 30 years and qualify for the benefits allowed in Article 18-9.

18-9-3    Half-time employees are only entitled to half of the incentive.

18-9-4    The incentive set forth under this section may be elected by employees between July 1 and July 15 only.  In order to be eligible, employees must complete their contract for the relevant school year.

18-9-5    Article 18-9 is effective for the current contract and may be renewed at the option of the District.  The parties agree to discuss this in the future.

18-9-6    Any employee who is elected to receive an early retirement incentive under District Regulation 4370 is not eligible to receive any purchase of PERS service under this contract.

In order to qualify for District participation in the purchase of retirement service credit, an employee must meet the criteria and follow the procedures stated below:

1.    The individual must be a Clark County School District employee at the time the application to purchase retirement service credit is made.

2.    The employee resignation, the procedures for the early retirement incentive option and/or the insurance incentive declaration option must be completed no later than April 30 and at least three (3) months prior to the effective date of retirement from the District.  Further, the effective date of retirement from the District cannot be later than December 31 of that calendar year.  In order for an employee to take advantage of this Option Two retirement

program, the employee must begin receiving benefits within thirty-six (36) months of the last day of employment.

3. Employees requesting early retirement benefits must have completed a minimum of fifteen (15) years of tenure with the Clark County School District and a maximum of twenty-nine (29) years of service.

4. To determine the buy-out contribution, the District will contribute the current prevailing actuarial contribution rate for regular members under the employer pay contribution plan.

5. Article 18-9-6 may be implemented, extended or modified any time at the sole discretion of the District. This Article is not subject to the grievance and arbitration procedures.

18-10     Maternity/Paternity/Adoption Leave

18-10-1     Maternity/paternity/adoption leave may be granted to teachers. Leave of absence for maternity/paternity/adoption must be applied for not later than sixty (60) calendar days prior to the expected date of delivery and, if possible, notice shall be given before the anticipated placement date of an adopted child. Upon written request of the teacher for paternity/adoption and written approval of the teacher's attending physician for maternity, the District may return the teacher to active status prior to expiration of the leave. At the expiration of the leave, the teacher must return to active duty, apply for and be approved for a leave of absence, or resign.

18-10-2     Teachers who become pregnant may continue to perform their assignments until:

a. the teacher requests relief from assigned duties, or

b. the District determines that the teacher's condition prevents the teacher from carrying out the essential functions of the job.

18-10-3     A teacher shall be granted maternity/paternity/adoption leave not to exceed six (6) calendar weeks immediately surrounding the birth or placement of the child. The teacher will have the option of charging any and all maternity/paternity/adoption leave to accrued sick leave or, if accrued sick leave is not sufficient, leave may be taken without pay.

18-10-4     Where both parents of a newborn or newly adopted child are employees of the school district, the total combined sick leave available to both employees for purposes of Article 18-10-3 shall not exceed six (6) weeks.

18-11     Sick Leave Pool

18-11-1     Sick Leave Pool Committee

A Sick Leave Pool Committee shall be established to administer the District Sick Leave Pool. The committee shall be composed of an equal number of members appointed by the Association and the District and will develop procedures for the operation of the Pool.

18-11-2     Sick Leave Pool

1.  Pool participants must have a minimum of six (6) days of accrued sick leave.

2.  When the requirements set forth in this section and any others established by the committee have been met, the participant shall be compensated for all unpaid days up to the maximum set by the committee for that particular claim.

3.  Each participant may, during the period September 1 to September 30, or May 1 to May 31, which shall be the "window" periods established to contribute to the Pool, contribute one (1) day of earned sick leave to the Sick Leave Pool.

    If the Pool fails to become operable, any participant who contributed one (1) day, within the window period, to the Sick Leave Pool shall have it returned to the participant's account.

4.  The Sick Leave Pool shall have a minimum of one thousand (1,000) days on deposit before becoming operable.

5.  The following minimum requirements for the operation of the Pool shall apply:

    a.  No participant shall be eligible for more than one hundred (100) days during any one school year.

    b.  No participant shall be eligible to access the Pool until all accrued sick leave and personal leave has been exhausted.

    c.  No participant shall be eligible to utilize the Pool until the participant has been absent for at least ten (10) consecutive days.

    d.  Access to the Pool shall be applicable only to the catastrophic injury or illness of the participant.

    e.  Participants applying for days from the Pool must submit an application which must include justification for the leave and a certificate from a physician.  The Committee can require a second medical opinion from a physician selected by the Committee to be paid for by the participant.

    f.  Participants who are determined to have abused use of Pool days will reimburse the days drawn from the Pool and will be subject to disciplinary action in accordance with the provisions of this Article.

    g.  Any participant utilizing days from the Pool shall not be required to reimburse those days except as a regular contributing participant.

    h.  In the event the operation of the Sick Leave Pool is more expensive than anticipated by the District, the District may discontinue operation of the Pool upon thirty (30) days written notice to the Association.

## ARTICLE 19
## BEREAVEMENT LEAVE

19-1    Leave with full pay shall be allowed for three (3) days for each period of bereavement or absence due to death in the immediate family of the employee and must be used for that purpose.  Two (2) additional days with full pay may be approved by the employee's supervisor.  Time may be allowed for travel, with maximum bereavement leave not to exceed seven (7) days.  Bereavement leave shall be deducted from sick leave.  For purposes of Article 19, the term "Immediate Family" shall be defined as per Article 1-11.

## ARTICLE 20
## PERSONAL LEAVE

20-1    All licensed employees will qualify for one day of universal leave.  This universal day will be deducted from accrued sick leave but not counted against sick day usage for earned personal leave.  Earned personal leave as defined herein may only be granted to those employees who qualify for such leave in accordance with the provisions of 20-2.

20-2    Employees who in the prior school year completed their contracts and who commenced their contracts by October 1 of the prior school year and who used five (5) days or less sick leave exclusive of universal and bereavement leave (in the prior school year) through July 31 of the current contract year shall be entitled to two (2) days earned personal leave with pay.  Employees who in the prior school year completed their contracts, who commenced their contracts by October 1 of the prior school year, and who use no sick leave exclusive of universal, personal, and bereavement leave through July 31 in the prior school year shall be entitled to a total of four (4) days earned personal leave with pay.  Employees who in the prior school year used more than five (5) days sick leave exclusive of universal, personal and bereavement leave, are not entitled to earned personal leave.  Earned personal leave shall be in addition to the day of universal leave.

Teachers who are on contracts which include add-on days that total two hundred and fourteen (214) days or more and who use six (6) days or less of sick leave exclusive of universal, personal, and bereavement leave (in the prior school year) through July 31 of the current contract year shall be entitled to the two (2) days earned personal leave with pay as provided for above.

20-3    Universal leave in accordance with 20-1 and limited by 20-4 and earned personal leave, in accordance with 20-2 above, limited by 20-4 and 20-5, shall be granted to employees without any limitation on the purpose for the use of such days.

20-4    Employees shall notify their immediate supervisor of the intended use of a day's universal and/or earned personal leave at least four (4) days prior to the date to be used, except in cases of personal emergencies.  In the latter case, notice should be given as early as possible.

20-5    Earned personal leave shall not be taken during the first five (5) days and the Friday before Labor Day, or the Tuesday and Wednesday following Labor Day that licensed employees are required to be on duty or the last five (5) days licensed employees are required to be on duty, as well as the Thursday and Friday preceding the last day of school, except in cases of emergency or graduation of a member of the licensed employee's immediate family from school, college, or university.

20-6    Licensed employees may elect to buy-out earned personal leave at the daily rate of pay for a short-term substitute teacher in lieu thereof.  Earned personal leave days not used by the end of a licensed employee's school year shall be purchased by the District and may not be accumulated.

20-7      Licensed employees may elect to buy out universal personal leave at the daily rate of pay for a short-term substitute teacher in lieu thereof.  Universal personal leave days not used by the end of a licensed employee's school year shall be purchased by the District and may not be accumulated.

20-8      Any personal leave day provided for by this Agreement which is used by July 31 shall be charged to the current school year for calculation of personal leave days.

## ARTICLE 21
## WORK YEAR

21-1      The work year of the teachers covered by the classroom teacher salary schedule (other than new personnel who may be required to attend five (5) additional orientation days) shall consist of not more than one hundred and eighty-four (184) school days and shall be distributed according to the calendar determined and officially adopted by the Board of School Trustees.  Two (2) of the five (5) above-mentioned days shall be set aside for routine personnel functions and association business but may not compel association membership.  Teachers shall be provided a block of time of at least one day before classes begin to prepare their classroom/work area for the school year.  Teachers assigned to a year round schedule may be required to work the equivalent amount of days as calculated in minutes.

21-2      Notwithstanding the provisions of 21-1 above, teachers who are assigned to a year round school may be required to work additional days beyond those provided for in 21-1 above. The assignment of such additional days shall be determined by the year round school calendar for the particular teacher's attendance cycle.  The teachers assigned to work additional days at a year round school beyond the one hundred and eighty-four (184) or equivalent school days provided for in 21-1 shall be compensated at their daily rate for each day worked beyond the one hundred and eighty-four (184) school days.

21-3      For the purpose of 21-2 above, a teacher's daily rate of pay shall be the teacher's annual salary as reflected on the teacher salary schedule divided by the number of contract days of service.

21-4      The work year shall meet the criteria established by Nevada Statutes.  The teacher work year shall consist of no more than one hundred and eighty-four (184) or equivalent school days as provided for in 21-1.

21-4-1      The work year shall begin no earlier than the third Monday in August and shall end in accordance with the calendar adopted by the Board of School Trustees.

This section does not apply to early reporting dates for employees (such as but not limited to counselors, librarians, in-service participants) who are required to report prior to the official first day, nor does it apply to new hires.

Notwithstanding the above, for the following school years the designated start date for the years noted below may be as follows:

For the 2017-2018 school year, Wednesday, August 9.
For the 2018-2019 school year, Wednesday, August 8.
For the 2019-2020 school year, Thursday, August 8.

21-4-2      The work year shall end no later than the second Friday in June.  The school year shall end at the completion date specified in the individual contracts.  The

school year for teachers assigned to year round schools shall end in accordance with the calendar adopted by the Board of School Trustees.

21-4-3    Consideration shall be given for teacher attendance at university summer sessions.  Such consideration shall not be construed as to dictate school starting times nor school ending times.

21-4-4    The work year shall include all state-approved holidays.

21-4-5    The work year shall include the winter, Thanksgiving, and spring breaks as adopted through the school calendar by the Board of School Trustees.

21-5      Up to five (5) professional development days are currently allowed if approved by the State Superintendent of Public Instruction. The current contract day is seven hours and eleven minutes for licensed staff (431 minutes).

Upon approval of the Nevada Department of Education, four (4) days of professional development or 1,724 minutes would be available to utilize for professional development. This time would be "banked" to provide additional professional development minutes to be utilized each week for 27 weeks during the academic year.  The four days of professional development would then become unassigned work days for the licensed teaching staff.

For purposes of this article, "banked time" means professional development time used in lieu of the designated professional development days.

For purposes of this article, "unassigned day", means a professional development day that has been banked as described above.

The "banked" minutes would be combined with the contractual time either before or after school.  The "banked" minutes would become part of the contractual day for the licensed employees at the site.  All licensed employees in the building would be required to participate in the professional development activity as determined by the site team.

During the year prior to when the four days are to be used in this manner, the District and the CCEA shall communicate the information to all licensed staff no later than March 31 in the school year prior. Such time shall be designated as Site-Based Collaboration Time ("SBCT"), and shall be utilized in accordance with the following provisions:

21-5-1    Site teams, which will include the supervising administrator and licensed personnel assigned to that site/department, will jointly develop a professional development calendar prior to the first student day of the school year. The site teams will determine the day(s) of the week for the SBCT to be held. For example, a school team may determine to add 32 minutes on Tuesdays and Thursdays for the 27 weeks and another school team may determine to add 64 minutes on Wednesdays.  SBCT shall be utilized in increments of not less than 30 minutes per session.

21-5-2    It is agreed that the time shall not be used for individual licensed personnel to work in their classrooms, and will be required to participate in the activity as determined by the site team.

21-5-3    It is agreed that the intent of SBCT is to provide time for staff to meet in small or large groups to focus on improving instruction and student learning, with professional development topics that are mutually planned and scheduled by site teams and the principal at the school level or site administrator and licensed staff in units/departments. Expected uses of SBCT include, but are not limited to professional development and collaboration around the following:

a. Unit/lesson design based on the Nevada Academic Content Standards and grade level expectations
b. Sharing best pedagogical practices in alignment with the Nevada Educator Performance Framework
c. Discussing and analyzing student work and student outcomes
d. Analyzing and planning around student data
e. Learning together
f. Instructional studies (research, articles, books, webinars, lesson studies)
g. Deepening content knowledge
h. Community/family engagement.

21-5-4   For staff assigned to multiple sites, employees shall work with building administrators to accommodate their unique schedules.

21-5-5   Licensed employees who are in unique/limited subject/licensure areas and/or departments shall, with permission of the supervisor, be permitted to attend SBCT sessions which may offered in other schools/departments and which may offer professional development and collaboration more aligned to the employee's licensed assignment.

21-5-6   The parties recognize that in some cases a licensed employee may utilize sick or other accrued leave on days which include SBCT sessions. If the employee utilizes paid leave on the day SBCT occurs, it is agreed that the employee will not be penalized monetarily for the SBCT, and does not need to utilize partial hours or percentages of leave balances for the missed SBCT. However, it is also agreed that if a licensed individual habitually misses SBCT sessions, the site administrator may report the licensed employee to the Human Resources Unit.

21-6   Teachers on extended or add-on days contracts must complete the number of days of work specified in their individual contract.  In order not to exceed the number of contracted days, time-out days may be taken during the school year with the approval of the principal. Add-on days contracts are at the discretion of the District.

21-7   The District and the Association agree to establish a joint committee to make recommendations regarding operations involving year round schools.

21-8   The principal shall have the right to permit a modification of the calendar year for school facilitators.  Agreements shall be reduced to writing.

**ARTICLE 22**
**HOURS OF WORK**

22-1   Classroom teachers covered by this Agreement shall be required to work at the school premises a regular workday of seven (7) hours and eleven (11) minutes including the duty-free lunch period provided below (the workday).  This is not applicable to teachers whose work year is less than one hundred and eighty-four (184) days as provided for in Article 21-1.The daily starting and departure time for classroom teachers shall be set in each school by the principal, subject to any limitations due to transportation, enrollment or other aspects of the student day.  Except in cases of temporary changes necessitated by emergencies, the principal shall seek the advice of the Teacher Advisory Council regarding any revision in the daily schedule.  The principal shall seek the advice of the Teacher Advisory Council regarding any revision to the daily starting and departure times

for teachers once they have been set.  Individual teacher schedules, within the established starting and departure times, may be revised by the principal without seeking the advice of the Teacher Advisory Council.

22-2       During each workday, classroom teachers referred to in 22-1 above shall be granted a duty-free lunch period of thirty (30) minutes.  This duty-free lunch period will not be interrupted except when emergencies make it necessary to alter a teacher's assignment or special events as determined by the Teacher Advisory Council, if one exists at the school, in conjunction with the principal, alter the foregoing.  The School District will continue to allow elementary teachers to combine classes during student recess periods to a level approved by the principal in order to provide a break for teachers on as many days as possible.

22-3       The principal shall have the authority to permit divergence by teachers within the workday.

22-4       Assignments of classroom teachers of the bargaining unit during their workday to lunch duty, yard or playground duty, hall duty and other functions, such as nonpaying extracurricular assignments outside their workday, shall be determined by the principal with the advice of the Teacher Advisory Council, if one exists at the school.

22-5       It is recognized that certain meetings for educational, not extra-curricular, activities may be scheduled to extend beyond the day without additional compensation for the purposes listed below:

22-5-1     Attendance at general faculty meetings.

22-5-2     Special meetings may be called by the superintendent or school principal.  It is agreed, however, that there shall be no more than three (3) such meetings per school year.  Five (5) working days' notice shall be given.

22-6       Individual parent conferences which exceed the workday may be scheduled at the mutual convenience of both teacher and parent.  When this is not successful, the principal shall schedule the conference at an appropriate time.

22-7       Non-paying extracurricular assignments exceeding the workday may be made when volunteers are not available.  Involuntary assignments shall be made on an equitable basis.  Every reasonable attempt shall be made to give at least ten (10) working days notice.

22-8       When a teacher specialist is in charge of the entire student class of a regularly assigned classroom teacher, the regularly assigned classroom teacher may, with the permission of the principal, leave the classroom and use that time for professional purposes.  The principal shall not unreasonably withhold such permission from the requesting teacher.

22-9       Travel time of any teacher required to travel during the normal school day shall be considered as a part of such teacher's teaching day.

22-10     The provisions of 22-1 through 22-9 above relate to the time classroom teachers and other employees covered by this Agreement are required to remain at the school premises where their primary functions are performed.  It is further recognized by the parties that all employees covered by this Agreement will find it necessary to work additional time either at such premises or away from such premises to fulfill the full scope of their professional responsibility.  As a result, the employees covered by this Agreement agree to perform that additional work necessary to adequately fulfill their professional responsibility without additional compensation except as otherwise provided by specific provisions of this Agreement.

22-11    It is the intent of the District that the time added to the teachers' workday beyond the seven (7) hours shall be implemented with the start of the 1990-91 contracted school year and shall be used to increase existing periods at the secondary level and subject areas at the elementary level.


## ARTICLE 23
## NO STRIKES/WORK STOPPAGES

23-1    It is hereby agreed by the Association that there will be no strikes, stoppages of work or slowdown of the operations of the School District during the term of this Agreement.

23-2    It is hereby agreed by the School District that there will be no lock-out of employees during the term of this Agreement.


## ARTICLE 24
## GENERAL SAVINGS CLAUSE

24-1    It is not the intent of either party hereto to violate any laws of the State of Nevada or of the United States.  The parties agree that in the event any provision of this Agreement is held by a court of competent jurisdiction to be in contravention of any such laws, they will enter into immediate negotiations thereon.  The remainder of the Agreement shall remain in full force and effect.


## ARTICLE 25
## TEACHERS' CONTRACT OF EMPLOYMENT

25-1    This Agreement shall be incorporated by reference and become a part of the teachers' contract of employment.


## ARTICLE 26
## PROFESSIONAL COMPENSATION

26-1    The following definition of terms shall apply to Article 26 and any other applicable portions of this Agreement.

   a.   Professional Salary Table (PST): The salary table in effect from March 1, 2016, through end of the 2015-2016 school year (Table 1), and, subsequently, the salary table in effect for the 2016-2017 school year (Table 2), which contains a cost of living increase of 2.25% on each step.

   b.   Salary Schedule (SS): The salary schedule in effect for the 2015-2016 school year (Table 4).

   c.   Transitional Salary Schedule (TSS): The transitional salary schedule (Table 3) which includes an additional new step on each column, the value of which is $1321.00 higher than the highest step in the same column. Other than the additional step, the TSS is the same table as the SS.

   d.   Contact units earned for participation in designated coursework or professional development, as follows:

1. One (1) contact unit shall be earned for each one hundred eighty (180) minutes of participation outside the licensed employee's contracted work day and as approved by the principal/designee or appropriate administrator.

2. Five (5) contact units shall be earned for each college/university semester credit.

3. Three and one half (3.5) contact units shall be earned for each college/university quarter credit.

4. Five (5) contact units shall be earned for one CCSD Professional Development Education Unit.

5. Five (5) contact units shall be earned for one Continuing Education Unit (CEU). One (1) CEU = fifteen (15) contact hours.

e. Professional Salary Table Column: On the PST the columns across which those who earn contact units advance.

f. Professional Salary Table Step: On the PST the steps by which those who earn service credit advance.

g. Joint Hearing Panel: The panel which will hear past and transitional disputes with regard to placement, i.e., steps as they relate to current placement on the salary schedule (SS), the transitional salary schedule (TSS), or the professional salary table (PST).

h. Professional Salary Table Joint Committee (PST-JC): The committee of not less than four CCEA members and four CCSD appointed administrators representatives of CCSD and CCEA who shall meet twice a year to review the salary schedule and any emergent issues or implementation problems.

i. NEPF: The Nevada Educator Performance Framework or any licensed personnel evaluation framework mandated by Nevada statute and/or CCSD policy (as applicable) for use during the time period of this Agreement.

26-2      Licensed personnel shall move from one column to the next on the salary table in accordance with the provisions below. For purposes of this section, use of the term NEPF shall refer to the Nevada Educator Performance Framework or to any licensed personnel evaluation framework mandated for use during the time period of this agreement.

     26-2-1      With the exception noted in Article 26-2-2, all licensed personnel shall only move from one column to the next column on the salary table once every three years, and such movement shall occur as follows:

a. Licensed employees may move across one column every three years if the employee has completed 225 contact units in accordance with that individual's professional growth plan.

b. Movement to a new column on the salary schedule shall be to the next column and then one step, as part of regular step movement, down on the salary schedule, i.e., move across and one step down. No licensed employee will be eligible for more than one step movement per year, in total.

c. These provisions apply to Articles 26-2-1 and 26-2-2.

d.  The process for licensed employees to move across one column pursuant to this Article shall begin in the school year 2016-2017.

e.  Accumulated units may only be utilized to move across one column at a time; in other words, the same units may not be utilized as the basis for multiple column moves.

26-2-2    For the term of this 2015 through 2017 agreement, licensed employees who are assigned to work in any designated Title 1, Tier 1, or Title 1, Tier 2, school for two consecutive school years, commencing with the 2016-2017 school year, and who are otherwise eligible to move across one column on the salary table may do so once every two school years, provided that:

a.  The licensed employee remains working in a Title 1, Tier 1, or Title I, Tier 2 school for the two years while completing 225 contact units and;

b.  Title 1, Tier 1, and Title 1, Tier 2, schools as utilized in this section mean schools identified as Title 1, Tier 1, or Title 1, Tier 2, as of January of the prior school year as determined by the Nevada Department of Education, and;

c.  If the licensed employee transfers to a school that is not a Title 1, Tier 1, or Title 1, Tier 2, school, then column movement will be implemented pursuant to Article 26-6, and the employee shall notify Human Resources that he/she is moving to the three-year track column movement.

d.  If the employee elects to move from a Title 1, Tier 1, and Title 1, Tier 2 school to one that is not in that category, then the contact units accumulated during the two-year time period shall apply to a three-year track column movement.

26-2-3    The "Professional Salary Table Joint Committee" (PSTJC) shall prescribe terms for movement across columns for those who earn "Master Practitioner" status, and such terms shall govern requirements for movement across no more than two columns within one four school-year time period upon achievement of Master Practitioner status. Such provisions shall provide the "Master Practitioner" licensed employee with the compensation equivalent of one column movement plus two steps, or not more than $7,926.00.

a.  Terms shall be agreed to by no later than February 1, 2016.

b.  Once such terms are agreed to, they will be incorporated into the language above and become Article 26-2-3.

c.  If the PSTJC cannot agree on terms, the Superintendent shall make the final determination.

26-2-4    Any dispute arising from a supervisor's denial of coursework and/or contact units toward column movement shall be handled in the following manner:

a.  The licensed employee shall seek informally to resolve the dispute by discussing the denial with his/her supervisor.

b.  If the dispute is not resolved at that level, the licensed employee shall submit a standard appeal form to the Joint Hearing Panel. The appeal form shall be developed by the Joint Hearing Panel and shall, at a minimum, include the following information from the licensed employee:

description of professional learning opportunities, applicable NEPF standard to which the professional learning opportunities apply, and reason(s) for requesting approval. The appeal form shall also include the reason(s) from the supervisor regarding why the course was not approved. This process shall be completed within two (2) weeks from the date of the submitted appeal.

c. If the dispute is not resolved at that level, the appeal form shall be forwarded to the cabinet member who oversees that unit/division for review and determination. This process shall be completed within (7) seven working days from the date of the cabinet member receiving the appeal.

d. If the dispute is not resolved at that level, the appeal form shall be forwarded to the Office of the Superintendent. The Superintendent shall issue a decision within seven (7) working days of receiving the appeal.

e. The decision of the Superintendent is final.

f. The Superintendent's decision is not subject to the grievance and arbitration procedures of this Agreement.

g. If a licensed employee wishes to utilize the grievance and arbitration provisions of this Agreement to dispute salary placement under this provision (26-2-4), the licensed employee may do so provided that:

26-2-4-1   The employee provides notification on the appropriate grievance form utilizing the timelines prescribed under the grievance and arbitration provisions of this Agreement.

26-2-4-2   The employee waives his/her option to utilize the Joint Hearing Panel Process described herein in Article 26-2-4.

26-2-5   A licensed employee shall advance one (1) step on the professional salary table for each additional year during the term of this Agreement. Even if licensed employees move across to the next column in accordance with the provisions of Article 26-2-1, they are only eligible to move one step for each school year.

26-2-6   Notwithstanding any provision of this Agreement to the contrary, there are licensed positions which may be determined by the District to be critical needs positions. In an effort to encourage licensed employees to accept and then to remain in those positions, the parties may negotiate new terms related to this issue under Article 26-5 of this Agreement.

26-2-7   Licensed personnel shall move one pay step on the Professional Salary Table (PST) effective June 1, 2018.  There will be no pay step retroactivity prior to June 1, 2018 for pay step movement.

26-2-8   For the 2018-2019 contracted school year only, licensed employees who qualify for column movement in accordance with the provisions of Article 26-2 shall be moved across one column.  Except for the column movement specified in the preceding sentence, there shall be no step movement, column movement or other wage, compensation or benefit increases (unless those matters are subject to a current grievance or arbitration proceeding) during the term of the 2018-2021 Negotiated Agreement unless changes are agreed to by the parties pursuant to Article 42.

26-3    Professional Growth System

26-3-1    The CCSD and CCEA believe it is important to maintain a professional learning system which leads to improvement in student learning and educator/licensed professional practice.    The PST shall recognize professional growth which promotes significant contributions to student learning and educator/licensed professional practice, and is equally accessible by all members of the bargaining unit.  The PST shall reward and encourage educators/licensed professionals to remain career-long learners in order to increase student learning, enhance and update relevant skills, and have educators/licensed professionals be visible models as learners to their students and colleagues.  Therefore, the Professional Growth System ("PGS") referenced in Article 26-3-3 herein shall encourage Professional Growth Plan (PGP) proposals which use evidence of updated skills and measures of student performance as the basis for column movement along the PST.

26-3-2    The purpose of the PGS is as follows:

a.   Provide career options for licensed professionals who want to seek additional responsibility without leaving the classroom;

b.   Recognize and reward licensed professionals who attain and demonstrate knowledge and skills that improve instructional and professional practice, and;

c.   Recognize and reward improved licensed professional practices that are a factor in student learning and other student outcomes.

26-3-3    Consistent with the Professional Growth System Memorandum of Agreement between the CCSD and CCEA, the process for developing and implementing a Professional Growth Plan shall be as follows:

a.   Develop an Action Plan.
b.   Design the PGP.
c.   Propose and receive authorization for the PGP.
d.   Maintain evidence of the PGP.
e.   Undergo a yearly review of the PGP.
f.   Document accomplishments pertaining to the PGP.

26-4    The Joint Hearing Panel comprised of three (3) CCSD designees and three (3) CCEA designees shall be established to review disputed educational attainment credits or placement concerns, i.e., steps as they relate to current placement on the salary schedule (SS), the transitional salary schedule (TSS), or the professional  salary table (PST).

26-4-1    Employees who dispute their current step/column placement on the salary schedule in effect at the beginning of the 2015-2016 school year shall submit their dispute to the panel by January 29, 2016. The Joint Hearing Panel must make a determination of those issues by February 12, 2016.

26-4-2    Employees who dispute their placement on the TSS shall have until March 15, 2016, to submit issues to the panel. The Joint Hearing Panel must make a determination of those issues by March 30, 2016.

26-4-3    Determination of employee placement and transition to the (new) PST salary schedule shall be governed by the provisions set forth in the "Memorandum of Agreement for Transition of Current Licensed Staff to the New Professional

Salary Table" and shall be finalized by February 15, 2016. CCSD and CCEA representatives shall meet on February 15, 2016, to review the placement and discuss any emergent issues. Employees shall be placed on the new salary schedule effective March 1, 2016.

26-4-4    If the Joint Hearing Panel cannot reach agreement, the Superintendent shall make the final determination, and such decision is not subject to the grievance and arbitration provisions of this agreement.

If a licensed employee wishes to utilize the grievance and arbitration provisions of this Agreement to dispute salary placement under this provision (26-4), the licensed employee may do so provided that:

26-4-4-1    The employee provides notification on the appropriate grievance form utilizing the timelines prescribed in Article 26-4 and in the "Memorandum of Agreement for Transition of Current Licensed Staff to the New Professional Salary Table," and;

26-4-4-2    The employee waives his/her option to utilize the Joint Hearing Panel Process described herein in Article 26-4.

26-4-5    Only pay for the 2015-16 school year, and the associated transition to the PST, is eligible for reconsideration of the Joint Hearing Panel. In other words, no retro pay for previous school years shall be provided, regardless of the decision of the Joint Hearing Panel.

26-4-6    It is acknowledged by each party that CCSD may require an adjusted timeline for the transition, should unanticipated difficulties arise. Should the timeline need to be adjusted, CCSD shall establish a new timeline, and the new timeline shall be communicated to the CCEA.

26-5    Representatives of CCSD and CCEA shall meet twice a year as the Professional Salary Table Joint Committee (PSTJC) to review the salary schedule and any emergent issues or implementation problems and by mutual consent can modify the terms of Articles 26-1 through Article 26-5.  Those meetings shall take place in the first and last quarter of each fiscal year's budget.

26-6    Recruiting and retaining qualified classroom teachers in at-risk schools (as outlined in Article 26-2-2) is an important outcome of the new professional salary schedule. Employees in at-risk schools as identified in Article 26-2-2, who are eligible for the two-year column movement track, shall move one column in the year following successful completion of the two-year program as long as they remain in an at-risk school as defined by Article 26-2-2. Accordingly, the parties agree to monitor progress on achieving that outcome, and if needed, shall consider modifying this Agreement to ensure that placing and retaining qualified classroom teachers in at-risk schools is being accomplished.

26-7    If using college/university credits as part of the employee's Professional Growth Plan, only units as awarded in semester hours or the equivalent quarter hours secured after the requirements for the degree have been completed for the degree, in upper division or graduate courses recognized by the Commission on Professional Standards in Education, will be recognized for use in the Professional Growth Plan

26-8    Initial placement for licensed employees who are hired by the District, and who have no previous contracted licensed employee experience, shall be on  Column 1, Step A.

26-8-1    A licensed employee hired after January 31, who has no previous teaching experience recognized by the District, shall not be eligible for advancement to

the next step until one year from the beginning of the ensuing school year. Licensed employees hired after January 31 must also complete the New Teacher Induction Program by the end of the third school year to advance to the next step. If a licensed employee fails to complete the New Teacher Induction Program, the individual will remain at Step B for the ensuing two school years and will not be able to advance to Step C until then.

26-8-2     A licensed employee who has no previous licensed experience recognized by the District, hired prior to February 1, must complete the New Teacher Induction Program by the end of the second school year. If an individual fails to complete the New Teacher Induction Program by the end of the second school year, the teacher will remain at Step B for the ensuing two years and will not be able to advance to Step C until then. New Teacher Induction Program contact units may also be accumulated and utilized for column movement.

26-9     Initial placement provisions for an experienced licensed employee new to the District who has been employed as a licensed employee within the last three years shall be as follows:

26-9-1     The licensed employee shall submit the employee's most recent licensed employee contract to Human Resources.

26-9-2     Human Resources shall determine the licensed employee's base salary contract amount from the employee's previous position.

26-9-3     Human Resources shall place the licensed employee on the Professional Salary Table (PST) in the following manner:

a.   Determine the value of the PST step closest to, but not less than, the licensed employee's previous licensed base salary.

b.   On the PST, place the employee on the closest corresponding step that is on the column farthest to the left, but no farther down the schedule than Step G.

c.   In other words, no new licensed employee shall be placed on step H, I or J.

26-10     An experienced licensed employee new to the District who has not been employed as a licensed employee within the previous three school years shall be placed on the PST as follows for the 2016-2017 and 2017-2018 school years.

26-10-1     The District will utilize the experienced employee's accumulated credits and experience to place the licensed employee on the Transitional Salary Schedule (TSS) in use for the 2015-2016 transition to the new Professional Salary Table (PST).

26-10-2     The District will then move the licensed employee to the PST in accordance with the provisions of this Article and the Article 26 Transition Memorandum of Agreement (MOA).

26-10-3     Placement of an experienced licensed employee new to the District who has not been employed as a licensed employee within the previous three school years shall be discussed no later than November 30, 2017, for determination of placement processes in future years.

26-10-4     When determining such placement, the following provisions shall be in effect:

26-10-4-1   In addition to complying with Nevada Revised Statutes for placement of licensed personnel with licensed experience in the state of Nevada, the District shall credit the licensed employee with professional growth credit for placement on the TSS for any course(s) taken that is related to:

(a)   The licensed employee's PK-20 related major or minor field of preparation, and for this section PK-20 is defined as a degree in the education of students at any of the following levels:

PK–14: Pre-School to Two-Year Degree
PK–16: Pre-School to Four-Year Degree
PK–18: Pre-School to Master's degree
PK–20: Pre-School to Graduate Degree

(b)   The teacher's most recent licensed assignment, or

(c)   The licensed employee's present endorsement(s), excluding a substitute endorsement, or PK-20 related degree(s), or

(d)   Additional endorsement(s), excluding a substitute endorsement, being pursued by the licensed employee, or

(e)   Additional PK-20 related degree(s) being pursued by the licensed employee.

(f)   Professional development credits ONLY if such credits were received after a Bachelor's degree and were required for an "alternative route to licensure" program leading to a standard teaching license in another state.

26-10-4-2   "Most recent licensed assignment" is defined as the class or classes the employee was assigned or licensed to teach in the most recent school year he/she worked or the class or classes the employee was notified would be taught in the subsequent school year.

26-10-4-3   "Related to" is defined as courses in the subject area taught at the secondary level and the basic core subjects such as, but not limited to, English, reading, math, and science at the elementary level.

26-10-4-4   "Additional endorsement(s) being pursued" is defined as taking the minimum number of courses which would qualify for an endorsement, or ten semester credit hours or the equivalent, approved by the Nevada Department of Education as meeting the requirements for an endorsement.

26-10-4-5   "Additional PK-20-related degree(s) being pursued" is defined as enrollment in a program leading to a PK-20-related degree, or other evidence which would indicate that the courses taken will lead to the awarding of a PK-20-related degree and which may be used for placement on the salary schedule in accordance with provisions of this Article.

26-10-4-6     With the exception of Article 26-10-4-1 (f), specifically excluded are courses which are not credit bearing toward a degree or in-service courses not offered by the District. In addition, the District may deny credit for courses which it deems are of a frivolous nature or which are not related to the established curriculum of the District. The definition of frivolous shall be grievable.

26-10-4-7     Only PK-20-related, advanced degrees awarded by an accredited institution recognized by the Commission on Professional Standards in Education in a field pertinent to the position and valid in their entirety for Nevada certification for level and subject taught will be recognized for advancement on the salary schedule.

26-10-4-8     Non-educational, "professional" degrees such as doctors of chiropractice, homeopathy, veterinary or other medicine, dentistry, divinity, juris doctor, business, MBA and similar degrees shall be awarded degree class placement on the licensed employees' salary schedule only if substantively related to the licensed employee's current assignment.

26-10-4-9     Licensed personnel required to take CEUs to maintain a professional accreditation that is required by the appropriate agency as determined by that state's licensing regulations shall be subject to the requirements and may use CEUs in lieu of professional growth. CEUs earned during the 2004-2005 school year and beyond may be used in lieu of professional growth credits at the rate of fifteen contact hours to one professional growth credit. CEUs must be earned through an appropriate, accredited provider.

26-11     The contracted salary of a licensed employee as specified in the schedules named in Article 26-1 shall be made in twenty-four (24) equal installments payable twice monthly, not to exceed twenty-four (24) payments per year.

26-12     ROTC instructors/ROTC instructor assistants shall be placed in accordance with the applicable provisions of Article 26-9, and in accordance with the ROTC instructor's/assistant's minimum instructor pay (MIP) in accordance with the applicable Defense Department regulations pertaining to minimum military instructor pay for ROTC instructors.

26-13     In order to place newly hired licensed nurses on the PST, the licensed nurse shall first be placed on the TSS and then shall be placed on the PST in accordance with Article 26-10. On the TSS, the licensed nurse is eligible for placement on Class D at the Step the nurse would otherwise have been eligible for in accordance with the provisions of Article 26-10.

26-14     Newly hired employees who possess an earned specialist degree will be placed first on the TSS and then will transition to the PST in accordance with Article 26-10 and the following provisions:

26-14-1     If the degree consists of no less than 65 credit hours after completion of a bachelor's degree, the newly hired licensed employee shall be eligible for placement on Class F on the TSS.

26-14-2    Any school psychologist who completes an equivalent program as that of a specialist and who receives a master's degree in school psychology from a university whose program is accredited by the National School Psychology Certification System and who is certified as such by the National Association of School Psychologists shall be eligible for placement in Class E on the TSS if the program consists of at least 49 credit hours after completion of the bachelor's degree and for placement in Class F on the TSS if the program consists of at least 65 credit hours after completion of the bachelor's degree.

26-15    District support staff employees who are hired as licensed employees within one (1) year of resignation or retirement from service as a District support staff employee shall be placed in accordance with the provisions of Article 26-10, utilizing the support staff employee's previous base salary.

26-16    Newly hired social studies teachers who possess a juris doctor degree shall first be placed on the TSS and then will transition to the PST in accordance with Article 26-10 and the following: the juris doctor degree shall be applicable for payment at Class D on the TSS salary schedule. Those eligible for placement under this sub Article shall be eligible for placement in Classes E and F if the requirements for placement in those classes have been otherwise met, provided that such credits have not been previously utilized for placement in Classes A, B, or C and were earned after awarding of the juris doctor degree.

26-17    Those licensed employees who, while serving in the U.S. Armed Forces, went to formal instructor training and taught full-time in a military training program shall be placed in accordance with the provisions of Article 26-9 or Article 26-10, as applicable, utilizing the instructor's previous base salary.

26-18    Licensed occupational teachers with an endorsement in business and industry assigned to teach a vocational subject at Southern Nevada Vocational Technical Center and Area Technical Trade Center or other non-comprehensive senior high schools or institutional programs where a degree is not required, and physical therapists and occupational therapists shall first be placed on the TSS and then will transition to the PST in accordance with Article 26-10 and the following: The licensed employee will be initially placed on Class D, Step 3, of the TSS salary schedule. This shall also apply to teachers in comprehensive high schools who are assigned to teach in nonacademic subjects which require a business and industry endorsement which endorsement is ineligible to be received on an educational elementary, secondary or special license.

26-19    The Superintendent or designee may, after consultation and agreement with the Association, recognize additional "service" credit for those covered under Articles 26-12 through Article 26-19.

26-20    Shared Contracts / Half-Time Contracts

Any licensed employee who accepts a shared contract shall be entitled to only one-half of the contribution paid by the District for health insurance benefits. This is not to be construed as an entitlement on the part of any licensed employee to a shared contract which may be conferred or renewed at the sole discretion of the District.

A shared contract shall consist of one full-time position at one school shared during one school year by two licensed employees who have agreed to accept such a contract.

Currently existing shared contracts will be allowed for the 2010-2011 school year. The status of establishing new shared contracts will be reviewed annually. A shared contract will be eliminated when one partner leaves the shared contract for any reason, when the

school decides to eliminate the shared contract, or when one partner in the shared contract falls below the surplus line.

If one partner leaves mid-year, (i.e. resigns, dismissed, LOA), the remaining partner may request to assume the full contract or to resign.

If one partner submits resignation effective the end of the school year, remaining partner must take the full contract for the ensuing school year or resign.

If the school decides to allow the shared contract to continue in the ensuing year and both partners are above the surplus line, both are allowed to remain in the shared contract.

If one partner falls below the surplus line, the partner below the line is surplused, and the partner above the line must take the full contract or resign. If both partners fall below the surplus line, both are surplused, and their position becomes a vacancy.

If the shared contract will be eliminated at the end of the school year, the full contract shall be offered to both partners. If only one partner wants the position, he/she gets it, and the other resigns. If neither wants the full contract, they both resign. If both want the position, the partner with more District-wide seniority gets it, and the junior partner must be placed into a vacancy, or if there is no vacancy, be surplused, regardless of seniority (even if more senior than others on staff).

An employee in a shared contract cannot participate in Voluntary Transfer unless the school decides that the shared contract will be eliminated or it is determined that it is possible the employee will be surplused from the school. However, an employee in a shared contract may participate in the Second Voluntary Transfer after surplus, if one occurs.

If an employee in a shared contract participates in Voluntary Transfer in anticipation of being surplused, and obtains a position, the employee is not entitled to return to his/her previous position even if it turns out that the employee would not have been surplused (i.e., after Voluntary Transfer, school does not have to surplus anyone). In other words, once an employee participates in Voluntary Transfer and obtains a position, that employee cannot return to his/her previous position.

An employee who is surplused out of a shared contract:

1.  May select a full-time position in Involuntary Transfer (at the surplus meeting); and
2.  Shall be treated as a full-time employee in the RIF process.

The District will continue to pay the entire health benefit contribution on behalf of half-time licensed employees.

Half-Time Contract Rules:

a.  May only seek a half-time position in Voluntary Transfer.
b.  May only select a half-time position in Involuntary Transfer.

26-21   For the 2010-2011 school year, $155,459, which was money previously earmarked and designated for new hire orientation, shall be used for the new hire orientation and for reimbursement to the District under Article 17-1-1. The amount shall be increased by two percent (2%) annually for the duration of the contract.

# CLARK COUNTY SCHOOL DISTRICT
## TABLE ONE (1): LICENSED PROFESSIONAL SALARY TABLE (PST)
### FISCAL YEAR 2015-2016
### EFFECTIVE MARCH 1, 2016

| Step \ Column | I | II | III | IV | V | VI | VII | VIII |
|---|---|---|---|---|---|---|---|---|
| A | $40,000 | $45,284 | $50,568 | $55,852 | $61,136 | $66,420 | $71,704 | $76,988 |
| B | 41,321 | 46,605 | 51,889 | 57,173 | 62,457 | 67,741 | 73,025 | 78,309 |
| C | 42,642 | 47,926 | 53,210 | 58,494 | 63,778 | 69,062 | 74,346 | 79,630 |
| D | 43,963 | 49,247 | 54,531 | 59,815 | 65,099 | 70,383 | 75,667 | 80,951 |
| E | 45,284 | 50,568 | 55,852 | 61,136 | 66,420 | 71,704 | 76,988 | 82,272 |
| F | 46,605 | 51,889 | 57,173 | 62,457 | 67,741 | 73,025 | 78,309 | 83,593 |
| G | 47,926 | 53,210 | 58,494 | 63,778 | 69,062 | 74,346 | 79,630 | 84,914 |
| H | 49,247 | 54,531 | 59,815 | 65,099 | 70,383 | 75,667 | 80,951 | 86,235 |
| I | 50,568 | 55,852 | 61,136 | 66,420 | 71,704 | 76,988 | 82,272 | 87,556 |
| J | 51,889 | 57,173 | 62,457 | 67,741 | 73,025 | 78,309 | 83,593 | 88,877 |

# CLARK COUNTY SCHOOL DISTRICT
## TABLE TWO (2): LICENSED PROFESSIONAL SALARY TABLE (PST 16-17)
### EFFECTIVE SCHOOL YEAR 2016-17

**2.25% Increase**

| Step \ Column | I | II | III | IV | V | VI | VII | VIII |
|---|---|---|---|---|---|---|---|---|
| A | $40,900 | $46,303 | $51,706 | $57,109 | $62,512 | $67,914 | $73,317 | $78,720 |
| B | 42,251 | 47,654 | 53,057 | 58,459 | 63,862 | 69,265 | 74,668 | 80,071 |
| C | 43,601 | 49,004 | 54,407 | 59,810 | 65,213 | 70,616 | 76,019 | 81,422 |
| D | 44,952 | 50,355 | 55,758 | 61,161 | 66,564 | 71,967 | 77,370 | 82,772 |
| E | 46,303 | 51,706 | 57,109 | 62,512 | 67,914 | 73,317 | 78,720 | 84,123 |
| F | 47,654 | 53,057 | 58,459 | 63,862 | 69,265 | 74,668 | 80,071 | 85,474 |
| G | 49,004 | 54,407 | 59,810 | 65,213 | 70,616 | 76,019 | 81,422 | 86,825 |
| H | 50,355 | 55,758 | 61,161 | 66,564 | 71,967 | 77,370 | 82,772 | 88,175 |
| I | 51,706 | 57,109 | 62,512 | 67,914 | 73,317 | 78,720 | 84,123 | 89,526 |
| J | 53,057 | 58,459 | 63,862 | 69,265 | 74,668 | 80,071 | 85,474 | 90,877 |

### CLARK COUNTY SCHOOL DISTRICT
### TABLE THREE (3): LICENSED TRANSITIONAL SALARY SCHEDULE (TSS)
### FISCAL YEAR 2015-2016
Additional Step per Class (+$1,321)

| STEP | CLASS A B.A. | CLASS B B.A. + 16 | CLASS C B.A. + 32 | CLASS D M.A. | CLASS E M.A. + 16 | CLASS F M.A. +32 | CLASS G PH D | CLASS H ASC | CLASS I ASC + PH D |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 34,637 | $ 36,495 | $ 38,357 | $ 40,221 | $ 42,087 | $ 44,447 | $ 45,947 | $ 47,589 | $ 49,089 |
| 2 | 35,085 | 37,942 | 39,809 | 41,669 | 43,541 | 46,145 | 47,645 | 49,286 | 50,786 |
| 3 | 37,531 | 39,398 | 41,256 | 43,122 | 44,985 | 47,844 | 49,344 | 50,984 | 52,484 |
| 4 | 38,985 | 40,845 | 42,705 | 44,559 | 46,429 | 49,536 | 51,036 | 52,677 | 54,177 |
| 5 | 40,427 | 42,291 | 44,155 | 46,019 | 47,880 | 51,236 | 52,735 | 54,377 | 55,877 |
| 6 | 41,236 | 43,745 | 45,615 | 47,466 | 49,330 | 52,934 | 54,434 | 56,074 | 57,574 |
| 7 | 42,557 | 44,620 | 47,054 | 48,917 | 50,779 | 54,631 | 56,131 | 57,773 | 59,273 |
| 8 | | 45,941 | 48,501 | 50,364 | 52,227 | 56,328 | 57,828 | 59,471 | 60,971 |
| 9 | | | 49,952 | 51,819 | 53,675 | 58,024 | 59,524 | 61,166 | 62,666 |
| 10 | | | 51,401 | 53,269 | 55,123 | 59,829 | 61,329 | 62,970 | 64,470 |
| 11 | | | 52,722 | 54,590 | 56,444 | 61,417 | 62,917 | 64,558 | 66,058 |
| 12 | | | | | | 63,463 | 64,963 | 66,606 | 68,106 |
| 13 | | | | | | 64,734 | 66,234 | 67,875 | 69,375 |
| 14 | | | | | | 66,029 | 67,529 | 69,171 | 70,671 |
| 15 | | | | | | 67,689 | 69,189 | 70,831 | 72,331 |
| 16 | | | | | | 69,010 | 70,510 | 72,152 | 73,652 |

#### DEFINITION OF CLASSES

CLASS A — Bachelor's degree and valid Nevada certification for the level or subject taught.

CLASS B — Bachelor's degree plus 16 increment growth units and valid Nevada certification for the level or subject taught. Units must be taken after receipt of bachelor's degree.

CLASS C — Bachelor's degree plus 32 increment growth units and valid Nevada certification for the level or subject taught.

CLASS D — Master's degree from an accredited institution in a field pertinent to position and valid Nevada certification for level or subject taught.

CLASS E — Master's degree plus 16 increment growth units and valid Nevada certification for level or subject taught, or completion of one Advanced Studies Certification 18-hour program. Units must be taken after receipt of master's degree

CLASS F — Master's degree plus 32 increment growth units and valid Nevada certification for level or subject taught, or completion of two Advanced Studies Certification 18-hour programs. Units must be taken after receipt of master's degree.

CLASS G — Doctorate degree from an accredited institution in a field pertinent to position and valid Nevada certification for level or subject taught.

CLASS H — Advance Studies Certification (Advancement to Column H is not approved).

CLASS I — Advance Studies Certification plus Doctorate Degree (Advancement to Column I is not approved).

Licensed employees completing the following years of District service will be eligible for longevity compensation for which PERS contributions will be made:

| District Service | Amount |
|---|---|
| 10-15 | $   750 |
| 16-20 | 1,000 |
| 21-25 | 1,500 |
| 26+ | 2,000 |

Please read very carefully Article 26 of the Negotiated Agreement between the Clark County School District and the Clark County Education Association to learn the criteria regarding increment growth units.

NOTE   The salary schedule reflects a PERS requirement regarding inclusion of the doctoral stipend on the salary schedule
- Class "G" reflects Class "F" plus $1,500 for a doctorate degree.
- Employees classified as "Class G" under the 2010-11 negotiated agreement will now be classified as "Class H". Movement to Class H through Advanced Studies Certification is not approved effective in the 2011-12 school year.
- Class "I" reflects placement in Class "H" with the addition of $1,500 for a doctorate degree for those in Class "H".

CLARK COUNTY SCHOOL DISTRICT
TABLE FOUR (4): LICENSED SALARY SCHEDULE (SS)
FISCAL YEAR 2015-2016

| STEP | CLASS A B.A. | CLASS B B.A. + 16 | CLASS C B.A. + 32 | CLASS D M.A. | CLASS E M.A. + 16 | CLASS F M.A. +32 | CLASS G PH D | CLASS H ASC | CLASS I ASC + PH D |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 34,637 | $ 36,495 | $ 38,357 | $ 40,221 | $ 42,087 | $ 44,447 | $ 45,947 | $ 47,589 | $ 49,089 |
| 2 | 36,085 | 37,942 | 39,809 | 41,669 | 43,541 | 46,145 | 47,645 | 49,286 | 50,786 |
| 3 | 37,531 | 39,398 | 41,256 | 43,122 | 44,985 | 47,844 | 49,344 | 50,984 | 52,484 |
| 4 | 38,985 | 40,845 | 42,705 | 44,569 | 46,429 | 49,536 | 51,036 | 52,677 | 54,177 |
| 5 | 40,427 | 42,291 | 44,155 | 46,019 | 47,880 | 51,236 | 52,736 | 54,377 | 55,877 |
| 6 | 41,236 | 43,745 | 45,615 | 47,466 | 49,330 | 52,934 | 54,434 | 56,074 | 57,574 |
| 7 | | 44,620 | 47,054 | 48,917 | 50,779 | 54,631 | 56,131 | 57,773 | 59,273 |
| 8 | | | 48,501 | 50,364 | 52,227 | 56,328 | 57,828 | 59,471 | 60,971 |
| 9 | | | 49,952 | 51,819 | 53,675 | 58,024 | 59,524 | 61,166 | 62,666 |
| 10 | | | 51,401 | 53,269 | 55,123 | 59,829 | 61,329 | 62,970 | 64,470 |
| 11 | | | | | | 61,417 | 62,917 | 64,558 | 66,058 |
| 12 | | | | | | 63,463 | 64,963 | 66,606 | 68,106 |
| 13 | | | | | | 64,734 | 66,234 | 67,875 | 69,375 |
| 14 | | | | | | 66,029 | 67,529 | 69,171 | 70,671 |
| 15 | | | | | | 67,689 | 69,189 | 70,831 | 72,331 |

DEFINITION OF CLASSES

CLASS A    Bachelor's degree and valid Nevada certification for the level or subject taught.
CLASS B    Bachelor's degree plus 16 increment growth units and valid Nevada certification for the level or subject taught.  Units must be taken after receipt of bachelor's degree.
CLASS C    Bachelor's degree plus 32 increment growth units and valid Nevada certification for the level or subject taught.
CLASS D    Master's degree from an accredited institution in a field pertinent to position and valid Nevada certification for level or subject taught.
CLASS E    Master's degree plus 16 increment growth units and valid Nevada certification for level or subject taught, or completion of one Advanced Studies Certification 18-hour program. Units must be taken after receipt of master's degree.
CLASS F    Master's degree plus 32 increment growth units and valid Nevada certification for level or subject taught, or completion of two Advanced Studies Certification 18-hour programs. Units must be taken after receipt of master's degree.
CLASS G    Doctorate degree from an accredited institution in a field pertinent to position and valid Nevada certification for level or subject taught.
CLASS H    Advance Studies Certification (Advancement to Column H is not approved).
CLASS I    Advance Studies Certification plus Doctorate Degree (Advancement to Column I is not approved).

Licensed employees completing the following years of District service will be eligible for longevity compensation for which PERS contributions will be made:

| District Service | Amount |
|---|---|
| 10-15 | $  750 |
| 16-20 | 1,000 |
| 21-25 | 1,500 |
| 26+ | 2,000 |

Please read very carefully Article 26 of the Negotiated Agreement between the Clark County School District and the Clark County Education Association to learn the criteria regarding increment growth units

NOTE       The salary schedule reflects a PERS requirement regarding inclusion of the doctoral stipend on the salary schedule.
   ≈       Class "G" reflects Class "F" plus $1,500 for a doctorate degree.
   ≈       Employees classified as "Class G" under the 2010-11 negotiated agreement will now be classified as "Class H". Movement to Class H through Advanced Studies Certification is not approved effective in the 2011-12 school year.
   ≈       Class "I" reflects placement in Class "H" with the addition of $1,500 for a doctorate degree for those in Class "H".

**ARTICLE 27**
**LONGEVITY PAY**

27-1    Longevity payments shall be made in accordance with the following schedule for the 2013-2014 school year only:

| Years of Service | Dates of Adj. Hire | Amount of Stipend |
|---|---|---|
| 10 – 15 | 6/99-9/04 | $   750 |
| 16 – 20 | 6/94-5/99 | $ 1,000 |
| 21 – 25 | 6/89-5/94 | $ 1,500 |
| 26+ | 6/46-5/89 | $ 2,000 |

27-2    Longevity payments shall be made no later than June 30.

27-3    To be eligible, employees qualifying for longevity payments must complete their contract year.  Sick leave, personal leave, religious observance, and short-term leave without pay approved by the principal shall be counted toward longevity.  In the event an employee dies prior to completion of their contract year, a pro rata payment shall be made to the designated beneficiary as provided by law.

27-4    PERS will be paid on longevity payments.


**ARTICLE 28**
**TEACHER HEALTH TRUST**

28-1    Teacher Health Trust

28-1-1  The Association may establish a teacher health trust (hereinafter the "Trust") for the purpose of administering group insurance and health care benefits to teachers.  The Trust shall conform to all laws of the state of Nevada and shall be approved by the Commissioner of Insurance in the same manner as trusts under NRS 287.010.  All costs of forming and operating the Trust shall be borne by Trust.  The Trust shall provide the School District with a copy of an independent audit of the Trust each year.

28-1-2  During the term of this agreement, and in accordance with the provisions and procedures of NRS 288.217, either party shall negotiate with the other regarding any proposed substantive benefit changes (including without limitation increased participant contributions, reductions in benefits or increases in benefits).  This article will be re-opened for this specific purpose, at any time, by one party notifying the other that it wishes to re-open negotiations for such purpose.  Provided, however, that a re-opening per this paragraph shall not constitute a re-opener for any other purpose or with respect to any other article, except as otherwise agreed by the parties.  Further provided that any re-opening of negotiations pursuant to this paragraph shall not involve any proposal for increase in the District's contribution to the Trust or increase in contribution from participants.  It is recognized that a substantive benefit change over which a re-opener is requested may eventually require prompt action by the Trust.  For that reason, the parties agree they will attempt to expedite any meetings or proceedings which may result from such a re-opener, with the goal of allowing the issue to be finally determined within three (3) months from the initial request for re-opening.

28-1-3  For purposes of this subsection, a change solely in insurance providers or in the insurance entity through which auxiliary insurance, for example, long term disability insurance, is provided shall not by itself constitute a "substantive benefit change" for purposes of 28-1-2 so long as there are no substantive changes in benefits that will result from the change in providers.

28-2      The District agrees to maintain the monies accumulated on behalf of the Trust through District and employee contributions in a trust and agency fund as defined by NRS 354.580 and to pay funds from said trust and agency fund as requested by the Trust.

28-3      The District shall contribute to the Trust for each participating teacher.

Effective July 1, 2017, the weighted health insurance contribution per enrolled participant shall be $583.87.  The District shall (a) contribute a cumulative total of $13,485,000 to the Trust in the form of the additional per participant contributions required by this amendment for the period January 1, 2003 through June 30, 2004; or (b) if during the period from January 1, 2003 through June 30, 2004, the District does not contribute a cumulative total of $13,485,000 in the form of the additional per participant contributions required by this amendment, then, after June 20, 2004 but no later than August 1, 2004, the District will make a one-time contribution to the Trust in the amount of the difference between $13,485,000 and the cumulative total of additional per participant contributions required by this provision that were made to the Trust during the period.  If the State at any time provides funds for (or "rolls-up") through its per pupil basic support part or all of the District's cost of the additional per participant contributions required by this amendment, the Association shall not later seek to have such legislative funding used for purposes other than covering the District's cost of funding these contributions.

28-4      Notwithstanding the provision of 28-3, for those employees who, through the Trust, elect to receive optional coverage (EPO or a successor option) in lieu of regular insurance coverage the District shall contribute seventy-five ($75.00) dollars per month per participating employee effective July 1, 2000, which constitutes the entire payment by the District to the Trust for all such employees.

The total payments by the District to the Trust under 28-3 and 28-4 shall be adjusted to a weighted average per employee for all participant employees of $583.87 effective July 1, 2017.  Any dollar adjustment due to the Trust shall be paid by the District at the same time as the next regular monthly payment to the Trust.  Any dollar adjustment due to the District shall be deducted from the next regular monthly payment to the Trust.

Effective July 1, 2017, an additional $4.60 per employee, per month, shall be added to the weighted health insurance contribution per enrolled participant of $583.87, specifically to be used by the Teachers Health Trust to reduce the per paycheck contribution by approximately one hundred dollars ($100.00) per month for those employees who, as of December 2015, were enrolled in the Platinum plan as "employee plus two (2) dependents."

28-5      The District is not a party to any contract of insurance between the Association, the Trust, any insurance carrier, administrator or provider of care.  The Association agrees that the District's only obligation is to contribute the sum agreed upon in Section 28-3 to the Trust and agency fund, to provide necessary payroll deductions, including eligibility lists, and to verify employment, all as may be required by the Trust.  The District's function is solely ministerial.  The Association, therefore, agrees to hold the District, its employees and agents, harmless for any and all claims, demands, losses, liability, costs or expenses of any nature, to include attorney's fees, arising from the creation and operation of the Trust. This section is not and shall not be construed as a release or waiver of any rights that the parties may have under this Agreement.

28-6      In the event that the Association is unable to continue the operation of said Trust, the District agrees that for the term of this Agreement it will contribute toward the cost of employee health insurance the sum set forth in 28-4 above.

28-7      The School District further agrees to continue to provide payroll deductions for additional insurance premiums as required by the Trust in accordance with the past practice of the parties.

28-8      The District agrees to maintain a Section 125 Plan with American Fidelity Assurance Company.  The contract for such plan will be included as an addendum to this Agreement. This provision does not limit the companies to which the School District may offer a similar benefit.

The parties agree that it is important for each employee to have knowledge of the benefits of the Section 125 Plan.  To that end, the parties agree to develop by August 15 of each year a plan designed to give teachers optimum access to the Section 125 Plan provider during teachers' preparation or lunch periods, with minimum disruption to the school operation.  The School District Associate Superintendent of Human Resources and the Association Executive Director shall be responsible for the design and implementation of the plan, which shall include a limitation that a teacher shall not use his/her preparation period for this purpose on more than one (1) occasion each school year.  Neither party to this Agreement shall cite or refer to the permissible use of a preparation period as provided in this Article in any subsequent grievance, arbitration or dispute.

28-9      The Trust shall have the use of a faculty bulletin board to post informational mailing including both programs and benefits.

28-10     Retiree Health Benefits

28-10-1    Retiree Health Plan

Effective January 1, 2009, the Association will establish a Retiree Health Plan (hereinafter "Plan") for the purpose of administering retiree health care benefits for qualifying teachers.  All costs of forming and operating the Plan will be borne by the Plan. The Plan is similar to the Teacher Health Trust and Articles 28-1 through 28-9 not in conflict with 28-10-1 and 28-10-2 apply to the Plan.

28-10-2    The District shall make no contributions to the Retiree Health Plan.  No licensed employee shall pay any assessments.

28-11

a.   Either party may by written notice sent to the other party on or after the execution of this Agreement and before October 12, 2013 unilaterally reopen Article 28 for the limited purpose of bargaining the terms of a District-wide Health Plan. Upon reopening, the provisions of NRS 288.217 shall apply except that the parties hereby agree that either party may declare impasse after October 12, 2013.  The parties agree to continue negotiating on a District-wide Health Plan until October 11, 2013.

b.   Article 28-3 and Article 28-4 shall remain in effect until bargained otherwise or altered by an arbitrator's decision.  This reopener shall not apply to Article 28-8.

c.   It is anticipated by the parties that after the adoption of a District-wide Health Plan the District's total expenditure for health insurance for all District employees may be lower than the total expenditure before adoption of a District-wide Health Plan.  For the first year, the parties agree that CCEA represented employees shall receive fifty percent (50%) of cost savings, to be used as economic enhancement for CCEA represented employees, to be negotiated by the parties.

     d.   During discussions under this reopener, the parties agree to discuss the following: the definition of a District-wide Health Plan, how cost savings are calculated and shared, including a multiple year contract. If an agreement is reached by the parties which is approved and ratified by the Board of Trustees and the Association, that agreement shall be submitted to an arbitrator if the parties are in impasse arbitration.

     e.   Due to the complexity of negotiating and/or arbitrating the selection of a District-wide Health Plan, any impasse arbitration relating to Article 28 shall be a separate proceeding before an arbitrator who will rule only on the Article 28 issues.  None of the issues relating to the topics set out in Article 41(a)-(g) shall be consolidated with the Article 28 issues.

This Interim Successor Agreement on Article 28 supersedes all prior agreements and tentative agreements on Article 28. This Interim Successor Agreement will be merged into the final collective bargaining agreement unless modified in light of other interim agreements or upon approval of the entire collective bargaining agreement.  The Term of this Interim Successor Agreement begins on January 1, 2016 and ends on December 31, 2016 or sooner if a new collective bargaining agreement incorporating this Interim Agreement becomes effective before December 31, 2016.

## ARTICLE 29
## PUBLIC EMPLOYEES RETIREMENT SYSTEM

29-1     The School District agrees to pay the standard employee and/or employer contribution to Social Security or any Public Employees Retirement System for each employee covered by this Agreement, as required by law.

29-2     For the 2014-2015 school year, teachers covered under this agreement will pay the employee's share of the July 2013 increase (1%) to the PERS contribution rate.  This payment is made by a reduction of the salary schedule of 1% as reflected by the salary schedule on page 37 of this agreement.  The total PERS payment for 2013-2014 and 2014-2015 is 25.75%.

29-3     Should PERS decrease the contribution rate, the employee's share of the decease (1/2) will be applied to the salary schedule.

## ARTICLE 30
## REDUCTION IN FORCE

30-1     The School District retains the right to determine when a reduction in force/layoff is necessary, the number of individuals whose employment must be terminated, and the areas within which such reductions in force will occur.

30-2     Subject to the determinations set forth in 30-1 above, the School District agrees to the following:

     (a)   Teachers who volunteer to leave from the area or areas affected by the reduction in force will be the first to be reduced in force.

     (b)   If the necessary reductions cannot be made through attrition and/or resignation, then teachers who have received a disciplinary document effective within the last two (2) successive contract years which resulted in a suspension of five (5) days or more will be the next to be reduced in force; provided, however, for purposes of this section that the suspensions relied upon were either uncontested or have been fully adjudicated and are not pending appeal and/or arbitration.  A teacher's placement on the list published pursuant to Article 30-4 shall not be adjusted based on the disciplinary

document prior to completion of the grievance process.  Teachers will be reduced in force based on the number of suspension days received in descending order.  Should there be more than one teacher with the same number of days of suspension served, district-wide seniority shall be the basis for the reduction in force of those teachers.

(c)  If the necessary reductions cannot be made by reducing in force those teachers outlined in 30-2(a), and (b), then teachers who have twice been rated as unsatisfactory within each of the last two (2) successive contract years will next be reduced in force based on district-wide seniority; provided, however, for purposes of this section, the two (2) unsatisfactory evaluations relied upon cannot occur within a six (6) month period and must occur in different contract years.  Additionally, the two (2) unsatisfactory evaluations relied upon must be based upon just cause and cannot be pending the grievance process.  A teacher's placement on the list published pursuant to Article 30-4 shall not be adjusted based on the two unsatisfactory evaluations prior to completion of the grievance process.  Unsatisfactory evaluations prior to June 8, 2012, will not be considered for purposes of this subsection.  Should there be more than one teacher who has twice been rated as unsatisfactory within each of the last two (2) successive contract years, district-wide seniority shall be the basis for the reduction in force of those teachers.

(d)  Any additional teachers to be reduced in force from the area or areas affected shall be reduced in force on the basis of districtwide seniority.

30-3    Districtwide seniority shall be defined as the total length of continuous service with the District for purposes of longevity payments.  For all other purposes, seniority shall be the length of seniority in licensed service.  The effective date in determining districtwide seniority shall be on the original date of employment with the School District except for employees whose employment has been terminated either voluntarily or involuntarily.  If a terminated employee is rehired by the School District, the seniority date will be determined by the first date of hire after the termination unless the employee is rehired within one year, in which case the employee will retain seniority as of the original hire date.

(a)  "Date of employment" shall be defined as the first day the employee reported to work for pay in the Clark County School District.

(b)  Teachers who are laid off may elect to be placed in a vacant support staff position in accordance with their qualifications provided that there are no support staff employees having priority for the vacant position.  Teachers placed in a support staff position will be placed no higher than Step C of the range of the job classification depending upon their training and qualification.

(c)  Teachers who are laid off and do not receive a support staff position shall receive priority for substitute assignments at the current substitute rate of pay, and shall be on substitute status and will be employed in accordance with School District Regulation (Assignments:  Substitute Teachers) and Policy (Employment of Substitutes and Part-Time Employees).

30-4    On or before November 1, the District shall publish a seniority list of teachers employed since January 1, 1980, and a copy of such seniority list shall be forwarded to the Association and to all schools.  Once the list has been posted, teachers shall have twenty-one (21) working days from the date of such posting to challenge placement on the list.  During the twenty-one (21) day challenge period, the District and the Association shall make every effort to resolve all challenges regarding date of employment and seniority ranking.  When all challenges are resolved, the District and the Association shall certify, by signature, that the list is correct.  Unresolved challenges may be processed under Article 4 only through grievance filed by the Association.  Every employee shall have the opportunity to challenge the list one time only.  Additions to the seniority list shall be made

once annually to include teachers hired after October 21 of the previous school year.  A list of these additions shall be posted not later than November 1 of the current year.  Only teachers employed after October 21 of the previous school year shall be permitted to challenge their date of employment and seniority ranking during the specified challenge period of twenty-one (21) working days.

In the event that more than one teacher has the same date of employment, relative seniority shall be determined by a lottery designed by the District after consultation with the Association.  The seniority list shall include date of employment, seniority ranking, and areas of certification.  A valid certificate on file with the Clark County School District at the time a reduction in force is announced shall be used to determine employee status.

30-5    A seniority list of all employees shall be established within a reasonable period of time.  The procedure established in 30-4 shall apply.  The seniority list of all employees shall be updated by November 1 annually.

30-6    Teachers on leave of absence shall receive a certified letter, which will include date of employment, seniority ranking, and areas of certification on file.  The letter will also tell teachers on leave of absence where seniority lists have been posted and the last date by which they can challenge placement.

30-7    Whenever possible, teachers who are to be laid off hereunder shall receive at least thirty (30) days written notice of such layoff.

30-8    Disputes regarding employees who have received written notice of an impending layoff as a result of a reduction in force shall be processed in an expedited manner.  Disputes regarding recall shall also be handled in an expedited manner.

30-9    Released teachers shall be placed on leave of absence with no obligation by the School District to rehire after the expiration of two (2) school calendar years.  Each teacher placed on leave of absence as aforementioned shall be reinstated in reverse order to reduction for new positions opening for which the teacher is certified and qualified.  The School District shall notify teachers placed on leave of absence of subsequent vacancies by certified mail to the last address registered by the teacher with the School District personnel office.

30-10   Teachers with less than full-time contracts shall not cause a teacher with a full-time contract to be reduced in force even though the full-time teacher has less seniority.  Full-time teachers shall not cause a teacher with less than a full-time contract to be reduced in force unless that teacher has less seniority than the full-time teacher.


**ARTICLE 31**
**PREPARATION PERIODS**

31-1    The School District agrees to maintain daily preparation periods during the student day in all junior and senior high schools.  At schools where block scheduling is in effect, the total preparation time provided shall be equal to the preparation time provided at schools not operating on a block schedule.

31-2    The School District shall maintain at each elementary school a minimum of two hundred and fifty (250) minutes preparation time per week per teacher, during the students' instructional day, in not less than forty- (40) minute blocks.  Each elementary school shall be allocated and assigned library aide hours per school day in accordance with the following schedule:

| Enrollment | Hours |
|------------|-------|
| 400 – 599 | 4 |
| 600 – 799 | 5 |
| 800 – 999 | 6 |
| 1,000 + | 7 |

This aide time is provided in addition to the assigned media clerk time.  Library aide time is guaranteed for the school year once set on a school year basis.  There will be no changes in library aide time allocated due to fluctuation in enrollment.  This provision for allocating library aide time will only remain as part of this Agreement if librarians are used to provide preparation time to elementary teachers.

31-3    Preparation time provided for in this Article shall be utilized by teachers in a manner which enables further development and refinement of professional skills and for instructional effectiveness.

31-4    Although it does not relate to any mandatory subject of bargaining, the School District states that it is its aim and objective to establish a maximum class load of thirty (30) students in grades 4, 5, and 6.

31-5    The District may direct use of teacher preparation periods if such directed use is infrequent, advance notice is given and the District's use of the teacher's preparation period must not consume an entire period.

31-5-1    The District may direct no more than four (4) teacher preparations periods per school year.

31-5-2    Except in an emergency, advance notice of District-directed use of teacher periods will be provided, which will be a minimum of forty-eight (48) hours.

31-5-3    A teacher's entire preparation period will not be utilized, and a minimum of ten (10) minutes will be left for use at the sole discretion of the affected individual teachers.

31-5-4    If the District directs more than four (4) periods per school year and no waiver is in place pursuant to Article 38, the affected teachers will receive payment of their contractual rate of pay for violation of Article 31-5-1.

31-5-5    Any dispute arising out of Article 31 shall be scheduled and heard expeditiously before the Grievance Review Committee, Summary Arbitration, and/or Arbitration under Article 4.

## ARTICLE 32
## SAFETY

32-1    A teacher will not be required to perform any duty or act which threatens the teacher's or student's physical safety or well-being except normal risks involved in carrying out teaching duties.

## ARTICLE 33
## EQUITABLE TREATMENT

33-1    All employees have a right to work in an environment free of unlawful discrimination, and statutory remedies are available to address these concerns.  Although resolution of such

disputes is outside the grievance and arbitration provisions of this Agreement, both the District and the Association assure all employees of the District of their intent to avoid such conduct and to assist employees in promptly resolving such disputes if they occur.

## ARTICLE 34
## INSTRUCTIONAL DISCRETION

34-1    Instructional discretion is defined as the discretion to teach about controversial issues which have economic, political, scientific, or social significance within the adopted curriculum standards and guidelines of the Clark County School District.

34-2    The Association recognizes that the principal is the instructional leader of the school.

34-3    The district recognizes that instructional discretion is essential to the fulfillment of the educational purposes of the Clark County School District.

34-4    Teachers shall have the discretion to use supplemental materials relevant to the levels of maturity and ability of the student and consistent with adopted curriculum standards and guidelines.

    34-4-1    Specific techniques are left to the discretion of the teachers so long as they are consistent with adopted curriculum and instructional standards.

34-5    A joint committee of District and Association representatives shall be formed to discuss Curriculum and Instruction issues.

34-6    A joint committee of District and Association representatives shall be formed to discuss Special Education issues.

## ARTICLE 35
## TRANSFER

35-1    Definitions

A. A voluntary transfer is any transfer which is initiated when a teacher submits a Request for Transfer form.

B. Involuntary transfer is any transfer initiated due to a decline in enrollment, the closing of a school, the failure to meet enrollment projections, a change in the student/staff allocation formulas, or any other condition which would require reducing the number of teachers allocated to a school or work location, or to a department within a school.

C. Seniority is district-wide seniority as defined in Article 30 of this Agreement.

D. Exempt teachers are members of the bargaining unit whose assignment requires service to be provided to the District at-large or at multiple work locations in accordance with Article 35-3-4.

35-2    Voluntary Transfers

A. Voluntary transfers provide teachers with an opportunity to change locations. Teachers may seek transfers with dignity, security, and freedom from anxiety in their relationships with administrators.

B. A voluntary transfer occurs when a teacher submits a Request for Transfer form and the receiving principal and the Human Resources Division approve the request. Teachers may only obtain one voluntary transfer during each school year except in extenuating circumstances.

C. Teachers may submit Request for Transfer forms after the first vacancy report has been distributed and prior to June 30.

D. Requests for transfers submitted after June 30 can only be approved by the Human Resources Division.

E. A teacher who has unsuccessfully pursued a transfer for two or more years may seek assistance in obtaining a transfer by requesting a conference with a personnel administrator.

F. When a teacher has completed five years of service with the district in the same location and/or instructional assignment and requests a voluntary transfer, every effort will be made to secure the transfer.

G. The first period for implementing voluntary transfers is the month of April each year; and the second period shall immediately follow the placement of all surplused Teachers and end the last day of June.

H. Vacancy notices listing positions available effective with the beginning of the ensuing school year will be listed at least once every seven (7) calendar days during the voluntary transfer periods.

Vacancy notices will be provided to the Clark County Education Association and will be posted in the Human Resources Division and sent to all schools and other licensed work locations.  No vacancy may be filled until three (3) school days after the vacancy notice listing the position has been issued.

I. Once a position is filled, it shall be noted on the subsequent vacancy announcement.

35-2-1   Early Transfer Period

A. The CCSD may elect to have an early transfer period that would begin on or about February 1 of each school year.

B. This early transfer period shall apply only to those vacancies existing in the Title I and At-Risk schools Regions designated by the district.  Teachers who transfer into one of these schools during the early transfer period shall be exempt from the usual two-year requirement provided in Article 35-2-C.

C. While the initial date on which new hires can be placed into schools for an ensuing school year is not a negotiated item in the collective bargaining agreement, it has been the practice of the district not to place new hires until after the end of the first voluntary transfer period described in Article 35-2 (G), so as to allow current CCSD teachers the chance to be selected for vacancies before new hires are placed. Pursuant to this provision, the parties acknowledge that the district may place new hires in the same schools noted above on or about March 1 in each school year.

D. For purposes of implementing the provisions of sections (A), (B), and (C) above, prior to February 1 of each school year the CCSD Human Resources Division shall analyze the history of vacancies still remaining at the end of the first voluntary transfer period in the previous two years at the schools for

which the early transfers and early new-hire placements apply.  Based on the history, the Chief Human Resources Officer, CCSD Human Resources Division, shall determine the maximum percentage of estimated vacancies that can be filled through early transfers and early placements of new hires.  The maximum percentage shall be set so as to leave a comfortable margin of vacant positions to which current teachers might still transfer should unforeseen circumstances cause a significant increase in current teacher transfers into the affected schools or should a drop in enrollment cause an unanticipated decrease in the number of licensed staff allocated.

E.  In the event that final allocations cause a school impacted by these provisions to be in a surplus situation, the teachers identified for surplus shall be in the following order:

1.  Any teachers newly hired for the ensuing school year shall be reassigned to other vacancies by the Human Resources Division.

2.  Any teachers who were selected as part of the early transfer process, in order of reverse seniority, shall participate in the normal surplus process, outlined in Article 35-3.

F.  No later than January 15 of each school year, CCSD shall provide CCEA with a list of the schools that will come under the provisions of this Article.

35-3    Involuntary Transfer

A.  An involuntary transfer may be initiated due to a decline in enrollment, closing of a school, failure to meet enrollment projections or a change in the student/staff allocation formulas.  Involuntary transfers will be in accordance with the provisions of this Article.

B.  Additional involuntary transfers may be required to adjust and balance staff during September and at the end of the first semester.  These involuntary transfers will be in accordance with the provisions of this Article.

35-3-1    The following procedure for identifying and assigning teachers subject to involuntary transfers will be used:

A.  A principal shall review the needs of a school and develop a staffing plan that will best utilize the staff allocation for the next school year by April 1 of each School Year, and within five (5) days of any subsequent change in allocation or staffing plan.  The principal shall notify staff of the initial staffing plan and tentative assignments for the following year by April 1 of each school year, and within five (5) days of any subsequent change in allocation or staffing plan.

B.  The plan shall identify the area of licensure and/or the department where staff may have to be reduced.

C.  Seniority ranking and the licensure on the seniority list (Article 30) will determine the teacher(s) to be involuntarily transferred.  The teacher with the lowest seniority ranking will be transferred unless otherwise provided in this Article.

D.  Before implementing any involuntary transfer(s), the principal shall hold a staff meeting at which time a teacher will be given an opportunity to

volunteer.  Teachers who volunteer to be transferred do not have the right to return to the previously assigned school under Subparagraph 35-3-3(B).

E.  A list of all vacancies in the School District shall be provided to each teacher who will participate in the involuntary placement process.   All teachers identified for involuntary transfer shall meet in one central location to choose, in order of seniority ranking, an assignment for which they are licensed from the list of vacancies.

Teachers with a K-8 elementary license who volunteer to be transferred from elementary schools may select departmentalized teaching positions in middle schools only if they have earned at least ten (10) semester hours of credit in the area of licensure for the position which they are selecting.

Teachers who are involuntarily subject to surplus under the provisions of Article 35-3-1 may not select a position in a middle school unless they have a minimum of 10 semester hours of credit in the subject area for the position if other positions are available for which they are otherwise licensed.

F.  A principal may request an exception to the seniority procedure only when a selection on the basis of seniority would result in eliminating a specific program in a school.  If there is a dispute, the matter will be reviewed by the Associate Superintendent, Human Resources Division, who will have three (3) days to resolve the matter.  If the matter is not resolved, the dispute will be resolved through the Expedited Arbitration Procedure.

G.  If an exception is approved, the principal will identify for involuntary transfer the next least senior person in that area of licensure.

H.  At the secondary level, involuntary transfers shall be by department. A teacher may not cause a teacher with less seniority in another department to be involuntarily transferred or to secure a vacant position in a department other than the one the teacher was assigned to teach in.

I.  New school transfers shall take place no earlier than February 1 of each contract year.  Department chairs at the secondary level and grade level chairs at the elementary level as well as librarians and counselors may be selected prior to February 1 of each contract year.

35-3-2   In the event that there is no vacancy available for which the teacher subject to involuntary transfer is licensed, the provisions of Article 30 (Reduction In Force) will apply.

35-3-3   Teachers who are reassigned through an involuntary transfer in the Spring of each contract year shall have the following rights:

A.  May seek a transfer to a location under the voluntary transfer procedure.

B.  Shall have the right to return to the previously assigned school if a vacancy should occur for which the teacher is licensed in the department from which the teacher was surplused, not later than the fourth Friday of September of each contract year.

This specifically excludes teachers at the end of the first semester of each contract year.

C.  If two or more teachers are involuntarily reassigned from a department, return rights shall be based on seniority.

35-3-4  Teachers assigned to locations where their services can be utilized to meet the needs of students either on an itinerant or district-wide basis are exempt from the provisions of this Article except as otherwise provided.

A.  Exempt positions include the following categories:

1.  Psychologists
2.  Nurses
3.  Itinerant Speech Therapists
4.  Itinerant Specialists
5.  Elementary Guidance Counselors
6.  Secondary Guidance Counselors may transfer to any available vacant position during the school year with the exception of the last quarter.
7.  GATE Specialists
8.  Project Facilitators
9.  Special Education Facilitators
10.  Education Computing Strategists

B.  Exempt teachers are excluded from the voluntary and involuntary provisions of this regulation but may submit a request to the supervising administrator indicating preference for reassignment at any time.  The honoring of the request for reassignment shall not be unreasonably withheld.

C.  Nurses and itinerant speech therapists may appeal a transfer through the Association to the Associate Superintendent, Human Resources Division, whose decision is final and binding.

35-4  For purposes of this Article, on or after February 1 of each contract year, a teacher who removes an endorsement in order to avoid being reassigned or after being assigned a class for the following school year may be reduced in force if no other positions are vacant for which the teacher is licensed.  Endorsements may be removed prior to February 1 of each contract year.

35-5  Teachers with less than full-time contracts may not use the transfer process to secure full-time positions.

35-6  Prior to April 1 of each school year, the School District may designate up to thirty (30) schools for which new hires may be offered positions beginning the first work-day in April. Designated schools must have a history of having vacancies in the previous school year after the end of the first voluntary transfer period described in Article 35-2(G).  The names of the schools so designated will be reported to the Association before April 1 of each year.

35-7  Specialized Units

The District will make every reasonable effort to identify, prior to April 1 of each school year, which specialized units will be moved from their present school location to a different school location, even if it cannot yet determine where the new site will be.  This will allow reasonable notice and opportunity for the affected teacher to pursue voluntary transfer options.  If an affected teacher does not wish to go to the new location and is unsuccessful in securing a voluntary transfer in April, that teacher will participate in the surplus pool in mid-May.  If the teacher is notified of the relocation after the May surplus meeting and does not wish to move with the specialized unit, the affected teacher shall, within five (5)

days of notification, select a position from a list of vacancies.  If more than one unit exists at a school, relocation will be based on seniority.

The District will establish a procedure for assuring that teachers hired for specialized classes are informed, in writing, at the time they are hired, that such special education units are assigned to locations at the discretion of the District and that, consequently, the existence of a particular unit at a specific school one year does not mean that the unit will continue at the school in subsequent years.

The prevailing factor in determining which special education teacher is to be surplused is the area of licensure, even if the units are assigned to secondary schools.

35-8      The intent and purpose of this Article is to facilitate the transfer of teachers, where such transfers are necessary or requested.  The parties agree to discourage any practice that may result in the unfair manipulation of transfer procedures.

35-9      The District's cultural diversity goals and objectives shall be considered when transfers are made.

35-10     The needs of students assigned to at-risk schools shall be considered when transfers are made.  If there is a dispute, the matter will be reviewed by the Associate Superintendent, Human Resources Division, who will have three (3) days to resolve the matter.  If the matter is not resolved, the dispute will be resolved through the Expedited Arbitration Procedure.

35-11     All disputes involving the interpretation and implementation of this Article shall be subject to Expedited Arbitration Procedures except as provided for in Article 35-3-4.

35-12     Teachers who will be returning from a leave of absence for the next school year, shall be eligible to participate in the selection of a school on the same basis as any other teacher with the exception that once a voluntary assignment has been secured, the teacher returning from leave will be assigned to the school for the coming school year and may not further volunteer for transfer to another location for the remainder of the school year for which the teacher has been assigned.

35-13     The parties shall establish a committee to make recommendations regarding the transfer procedures.


**ARTICLE 36**
**DISCIPLINARY PROCEDURES**

36-1      Neither the District nor the Association will discriminate against any member of the bargaining unit because of membership or non-membership in the Association or participation or non-participation in any of the Association's activities.

36-2      All written policies and regulations of the School District governing employee activities and conduct will be interpreted and applied uniformly throughout the District.

36-3      The personal life of a teacher is not an appropriate concern of the District and, therefore, shall not affect the teacher's employment status except when it has a legally relevant connection to the teacher's employment.

36-4      An employee about to undergo an investigatory interview is entitled to an association representative or another representative and reasonable notice shall be given.  Reasonable notice shall mean notification the day prior to the actual meeting except when circumstances may require a prompt investigatory interview.  Any and all notices of the

principal's desire to hold a conference with a teacher shall include the subject of the conference.  The written prior notice of investigatory meeting does not constitute the separate document required in Articles 14-3-1 and 36-12.

36-5     After reasonable notice has been given and in the interest of expediting a resolution to a disciplinary problem, the district may require an employee to choose between participating in an investigatory interview without representation, or not being interviewed.

36-6     An employee's right to representation during the course of an interview arises if the supervising administrator takes any steps beyond merely informing the employee of a disciplinary action.  In such instances, the provisions of 36-4 apply.

36-7     The employee's representative and the administrator will allow the employee to give an account of the alleged incident before any discussion by either of the named parties occur.  During the investigatory interview conducted by the administrator, all persons at the conference will conduct themselves in a manner that will result in a clear and thorough statement from the teacher regarding the facts of the alleged incident.  Nothing in this provision is meant to inhibit or limit the teacher's representative from fully and properly representing the teacher.

36-8     In implementing the suspension and dismissal procedures of NRS 391, the parties agree that the decision of the arbitrator shall be final and binding.  The arbitrator shall be selected in accordance with the expedited arbitration procedures in Article 4 of this Agreement.

36-8-1   The teacher or the teacher's representative shall, within ten (10) days of receiving the notice of suspension or dismissal demand that the matter be submitted to final and binding arbitration.  The matter shall be heard before the superintendent's designee prior to submission to final and binding arbitration.  The superintendent's designee shall hear the matter within five (5) days and shall submit a written response within five (5) days after the hearing.  In the event the matter is not resolved by the superintendent's designee the matter shall be submitted to final and binding arbitration.

36-8-2   Pursuant to NRS 391, the non-renewal of a probationary teacher's contract shall not be subject to a hearing or arbitration under the provisions of this Article (36-8).  Probationary teachers shall be entitled to a hearing and arbitration under the terms of this Article for suspensions or dismissals.

36-8-3   A teacher hired on or after December 1 of any school year shall be a probationary teacher for the remainder of that school year and for the ensuing school year.

36-8-4   In the event a teacher is suspended from employment, pending a recommendation for dismissal, the District may continue to contribute to the CCEA insurance Trust on behalf of that teacher, as stated in Article 28-3, throughout the suspension period.

36-9     Prior to initiating any of the above forms of disciplinary action, the district shall have followed a policy of progressive discipline which normally includes a verbal and written warning.

36-10    The arbitrator shall have the power to modify or deny the district's disciplinary action.  Any such modification of a penalty must be within the limits set forth in the Nevada Revised Statutes.

36-11    Although certain provisions of this Article are intended to modify disciplinary hearing provisions set forth in NRS 391, those provisions of NRS 391 which do not conflict with this Article shall remain in effect including, but not limited to, the superintendent's authority under NRS 391.314-1.

36-12    Any summary of conference, oral warning, written warning, admonition, suspension, dismissal, or direction for change shall be called to the employee's attention in writing within twenty (20) working days after the observation.  It is recognized that such written direction may refer to previously given verbal warning(s) in recognition of the need to preserve the progressive discipline model.

## ARTICLE 37
## EXTRA PAY FOR EXTRA DUTY SCHEDULE

37-1    EXTENDED DAY EXTRACURRICULAR PAY

This pay schedule for senior and junior high positions does not obligate the School District to institute the program.  However, if the program exists in the school, then all identified positions for that program must be filled.  If a club or activity does not exist, schools may utilize the funds from the unfilled extended day extracurricular position(s) for sponsors or clubs or activities not listed in 37-1 of comparable extended day commitments; i.e., number of students, hours, duration of activity, and performances in competition.

37-1-2  Senior High School – Extended Day Pay

| Position | Index, Class A, Step 1 Base Salary | No. of Positions For Each School |
|---|---|---|
| Head Football (M) | .093 | 1 |
| Head Basketball (M) | .093 | 1 |
| Head Baseball (M) | .079 | 1 |
| Head Track (M) | .084 | 1 |
| Head Wrestling (M) | .084 | 1 |
| Head Soccer (M) | .079 | 1 |
| Head Flag Football (W) | 079 | 1 |
| Head Tennis (M) | .054 | 1 |
| Head Golf (M) | .056 | 1 |
| Head Cross Country (M) | .068 | 1 |
| Head Swimming (M) | .063 | 1 |
| Head Volleyball (M) | .075 | 1 |
| Asst. Football (M) | .070 | AAAA-6, AAA-5, AA-4, A-4 |
| Asst. Basketball (M) | .070 | 2 |
| Asst. Baseball (M) | .061 | 2 |
| Asst. Track (M) | .063 | AAA-2, AAA-2, AA-1, A-1 |
| Asst. Wrestling (M) | .063 | AAAA-2, AAA-2, AA-1, A-1 |
| Asst. Soccer (M) | .059 | 1 |
| Asst. Volleyball (M) | .061 | 2 |
| 9th Gr. Basketball (M) | .043 | 1 |
| 9th Gr. Volleyball (M) | .038 | 1 |
| 9th Gr. Basketball (W) | .043 | 1 |
| 9th Gr. Volleyball (W) | .038 | 1 |
| 9th Gr. Soccer | .038 | 1 |
| Head Bowling (M & W) | .065 | 1 |
| Head Basketball (W) | .093 | 1 |
| Head Volleyball (W) | .075 | 1 |
| Head Softball (W) | .079 | 1 |

Head Track (W) ........................084 ...............................1
Head Soccer (W)......................079 ...............................1
Head Tennis (W)  .....................054 ...............................1
Head Golf (W)  ........................056 ...............................1
Head Cross Country (W) .............068 ...............................1
Head Swimming (W) ..................063 ...............................1
Asst. Basketball (W) .................070 ...............................2
Asst. Volleyball (W) ..................061 ...............................2
Asst. Softball (W)  ...................061 ...............................2
Asst. Track (W) ........................063 ........................AAAA-2, AAA-2, AA-1, A-1
Asst. Soccer (W) ......................059 ...............................1
*Band (over 500) .....................097 ...............................1
*Band (under 500) ...................082 ...............................1
*Chorus  ...............................063 ...............................1
*Mariachi/Guitar (over 500)........043 ...............................1
*Mariachi/Guitar (under 500).......040 ...............................1
*Yearbook  ............................075 ...............................1
*Drama/Theatre.......................080 ...............................1
*Newspaper............................056 ...............................1
*Pep Club ..............................032 ...............................1
*Cheerleader ..........................058 ...............................1
*JV/9th Grade Cheerleader............043 ...............................1
*Forensics/Speech Club .............057 ...............................1
*Dance/Drill Team ....................047 ...............................1
*Student Council ......................080 ...............................1
*Key Club ..............................030 ...............................1
*Human Relations ....................030 ...............................1
*Varsity Quiz ..........................043 ...............................1
*Athletic Director .....................104 ...............................1
*Orchestra .............................060 ...............................1
*Chess Club ...........................043 ...............................1
*FBLA ..................................043 ...............................1
*Science Bowl .........................028 ...............................1
*Honor Society ........................030 ...............................1
*ROTC..................................061 ...............................2
*DECCA ................................043 ...............................1
*VICA ...................................043 ...............................1
*FCCLA .................................043 ...............................1

*Does not qualify for years of experience.

37-1-3       Junior High or Middle School – Extended Day Pay

| Position | Index, Class A, Step 1 Base Salary | No. of Positions For Each School |
|---|---|---|
| 7/8th Gr. Basketball (M) | .042 | 1 |
| 7/8th Gr. Softball (M) | .039 | 1 |
| 7/8th Gr. Tennis (M & W) | .027 | 1 |
| 7/8th Gr. Track (M) | .033 | 1 |
| 7/8th Gr. Basketball (W) | .042 | 1 |
| 7/8th Gr. Volleyball (W) | .038 | 1 |
| 7/8th Gr. Track (W) | .033 | 1 |
| 7/8th Gr. Softball (W) | .039 | 1 |
| *Band | .063 | 1 |
| *Chorus | .042 | 1 |
| *Newspaper | .038 | 1 |

*Human Relations .........................028 ................................1
*Forensics ..................................028 ................................1
*Yearbook ..................................028 ................................1
*Orchestra ..................................040 ................................1
*Cheerleader ...............................028 ................................1
*Dance/Drill Team ........................028 ................................1
*Drama ......................................028 ................................1
*Chess Club ................................028 ................................1
*Honor Society ............................028 ................................1
*FBLA ........................................028 ................................1
*Student Council ..........................038 ................................1
*Mariachi/Guitar ...........................040 ................................1
*JV Quiz .....................................028 ................................1

*Does not qualify for years of experience.

37-1-3        Computation of Athletic Stipend

A.  The formula agreed upon to determine the amount of the stipend shall be based on the Index, Class A, Step 1 Base Salary, of the Salary Schedule (SS) in effect at the beginning of the 2015-2016 school year, and the Transitional Salary Schedule (TSS) in effect at the beginning of 2016-2017 school year, as follows:

|  | Teaching Experience | Index, Class A |
|---|---|---|
| Step | Within the District | Step 1 Base Salary |
| 1 | 1 – 3 | .0039 |
| 2 | 4 – 6 | .0078 |
| 3 | 7 – 9 | .0117 |
| 4 | 10 – 12 | .0156 |
| 5 | 13 or Over | .0195 |

B.  Schools may utilize two volunteer coaches per team per season.

The following positions are in addition to any volunteer coaches: statisticians, video personnel, student teachers, and athletic trainers.

37-1-4  Payment for Directing Intramural Programs

A.    Determination of Intramural Allotment to Schools:

The amount of funds available to secondary schools for extended day pay to direct intramural programs shall be based on projected student enrollment at the rate of $.92 per student.  Allotments will be based on the actual October 1 enrollments.  No secondary school shall receive less than $495.

B.    Determination of Payment to Individual Teachers:

Extended day pay for directing intramural activities will be based on the number of days per week an activity is supervised throughout the school year according to the following guideline:

| Number of Days Per Week Directing Activity | Number of Weeks | Total Pay |
|---|---|---|
| 1 | 36 | $ 275 |
| 2 | 36 | 549 |
| 3 | 36 | 825 |
| 4 | 36 | 1,099 |
| 5 | 36 | 1,374 |

37-1-5    Payment for Elementary Activity Fund

The amount of funds available to elementary schools to direct extended day activities shall be based on projected student enrollment at the rate of 92¢ per student. Allotments will be based on the actual October 1 enrollments.

## 37-2    EXTRA PAY FOR LICENSED PERSONNEL IN SPECIAL CATEGORIES

37-2-1    Secondary Counselors

Each full-time counselor shall be assigned nine (9) additional days of service at the employee's daily rate of pay.  PERS and other legally required contributions shall be made for these days from the negotiated salary package as required by law.

37-2-2   Librarians

A.  Librarians shall be assigned additional days of service, to be paid at the employee's daily rate of pay according to the following formula:

| Projected Enrollment | Additional Days Allotted |
|---|---|
| Under 500 | 3 1/2 |
| 500 – 999 | 7 |
| 1000 – 1499 | 10 1/2 |
| 1500 and Over | 14 |

The additional days may be broken down into additional hours upon agreement between the librarian and the principal according to the following schedule:

3-1/2 days or 24.5 hours at hourly rate;
7 days or 49 hours at hourly rate;
10-1/2 days or 73.5 hours at hourly rate;
14 days or 98 hours at hourly rate.

B.  PERS and other legally required contributions as required by law shall be made for these days.

37-2-3    Occupational Teachers

Teachers who are full-time teachers of occupational subjects and who hold occupational licensure with an endorsement in business and industry and meet the following requirements in the area taught shall receive $682 in addition to their basic contract salary:  a trade and technical work experience background which includes three (3) years continuous paid experience at the journeyman level, in addition to three (3) to five (5) years at the apprentice learning level.

This provision applies only to teachers employed as vocational teachers prior to the 1977-78 school year.

37-2-4    Teachers Requiring Special Licensing

(Psychologists, Speech Therapists, Special Education Teachers, Nurses) Teachers assigned to these specialist areas who hold proper licensing shall receive $220 in addition to their base contract salary.  This provision shall apply only to teachers employed in these positions prior to the 1977-78 school year.

37-2-5    Teachers Assigned to Remote Areas

Teachers assigned to remote or isolated areas shall receive an incentive allotment in addition to their basic contract salary.  Following are the rates:

<u>2010-2011</u>

| | |
|---|---|
| Blue Diamond* | 2,000 |
| Indian Springs | 2,000 |
| Goodsprings | 2,000 |
| Searchlight | 2,000 |
| Spring Mountain | 2,000 |
| Moapa Valley | 2,000 |
| Virgin Valley | 2,000 |
| Sandy Valley | 2,000 |
| Laughlin | 2,000 |
| Mt. Charleston | 2,000 |
| Southern Nevada Correctional Center Adult High School | 2,000 |
| High Desert State Prison Youthful Offender Program | 2,000 |
| Florence McClure Women's Correctional Center Adult High School | 2,000 |

*Effective with the 1992-93 school year, teachers at Blue Diamond will no longer receive remote pay.  Those teachers at Blue Diamond prior to the 1992-93 school year shall continue to receive remote pay as long as they are employed at Blue Diamond.

37-2-6    Responsible Teachers

A small school with a staff of one (1) to four (4) teachers shall have one (1) teacher designated as the responsible teacher.  Responsible teachers shall receive additional pay according to the following formula added to their base contract salary:

| Number of<br>Teachers | Additional Pay as a Fraction<br>of Teacher's Contract Salary |
|---|---|
| 1 | 1/25 |
| 2 | 1/20 |
| 3 | 1/15 |
| 4 | 1/10 |

37-2-7    School Bankers

Teachers assigned as school bankers to provide banking and accounting services of athletic contests at senior high schools shall be compensated at the rate of $6.60 per hour.  The maximum number of assigned hours per contest shall be based on student enrollment as indicated below:

```
1200 or more.........................4 hours
1199 - 600 ...........................3 hours
599 and below......................2 hours
```

37-2-8   Speech therapists, nurses, and psychologists assigned to year round schools shall be given one year at a time extended contracts with PERS paid.

37-3   EXTRA PAY RATE FOR INSTRUCTIONAL SERVICES

| Activity | | Amount |
|---|---|---|
| A. Continuing Education Instruction | | $ 22.00 |
| B. In-service Training Instruction | | 22.00 |
| C. Summer School | | 22.00 |
| D. Graduate Incentive Program | | 22.00 |
| E. Other Approved Instructional Services | | |
| 1. | Itinerant Teachers | 22.00 |
| 2. | Committees, Task Forces, P.D.E. Instructors | 22.00 |
| 3. | Approved Instructional Services Not Listed | 22.00 |
| F. Extra Duty Teaching Assignments | | |
| 1. | Early Bird/Late Bird | ) Teacher's |
| 2. | "Opportunity School" Instruction | ) Contract |
| 3. | "Sunset High School" Instruction | ) Hourly Rate |
| 4. | Juvenile Court School Programs | ) of Pay |
| 5. | Purchased Preparation Periods | ) |
| 6. | Extended School Year | ) |
| 7. | "Homebound" Instruction | ) |
| 8. | Instructional and Evaluative Services to students provided as required by the Individual with Disabilities Education Act | ) ) ) |

37-4   EXTRA PAY FOR TICKET TAKERS AND SELLERS

37-4-1   Varsity Athletic Contests   $10.00 per hour

37-5   The evaluation of a teacher may not include the performance of the teacher in any coaching assignment except for misconduct.

**ARTICLE 38**
**WAIVER OF CONTRACT PROVISIONS**

38-1   The parties to this Agreement recognize the need for on-going school improvement activities and agree that from time to time waivers to contractual terms as set forth herein are desirable.  It is therefore agreed that individual school sites when implementing site-based school improvement plans may implement specific waivers to the terms of this Agreement in accordance with the provisions set forth below.

38-2   Waivers will only be requested to deal with specific conditions at a particular site.  Any waiver must specify the contractual terms waived and the specific changes to the Agreement, including the length of time the waiver is to be in force.  No waivers may be requested which deal with any employee compensation, benefits, or welfare.

38-3   The parties value the participation of employees in the governance process at the site.  The purpose of shared governance is to improve student learning.  The District and Association share the commitment to create a positive culture within the District and to

support the participation of employees in the governance structure.   To facilitate this culture, the District and Association agree to the following:

38-3-1    Waiver Procedure

1.   A waiver request of a contract provision, once initiated, must be signed by 25% of the licensed staff at that site, including the responsible administrator. The proposal shall be submitted to the Association's President and to the District's Deputy Superintendent of Instruction no later than May 1 for the ensuing school year.   The petition must clearly identify which contract provision(s) is/are petitioned for waiver.

2.   Upon approval through 38-3-1-1, a secret ballot vote shall be conducted by the responsible site administrator and an Association representative.  The waiver request must receive the support of 70% of the votes cast by licensed personnel assigned to that work site including itinerant personnel. A reasonable opportunity shall be afforded to all site licensed personnel to participate in the voting process. The tabulation process may be observed by any interested party.

3.   Upon voter approval of 70%, the waiver request shall be submitted in writing to the Association's President and the District's Superintendent for final approval.

4.   A waiver may be renewed or rescinded by following the above procedure.  A waiver is valid for only one year.

38-3-2    Waiver Example – Unique School Plans

1.   To improve teacher retention, improve student achievement and decrease student drop-out rates, for the 2006-07 school year the District may designate an elementary, middle and senior high school to implement unique school plans which are designed to better meet the needs of the communities they serve.

2.   Each school will be free to develop its own plan to serve the needs of its students and staff.  The plans will be submitted as requests for waivers in accordance with the provisions of Article 38-3-1above.

3.   The plans could include components such as:

  ▪   Flexible scheduling
  ▪   Transportation options
  ▪   Accommodations for family and work schedules
  ▪   Increased parental involvement through language acquisition and/or technology opportunities
  ▪   Increased opportunities for remediation and enrichment
  ▪   Opportunities for teacher contract options

## ARTICLE 39
## EMPOWERMENT SCHOOLS

Any schools designated to become Empowerment Schools beginning with the 2008-2009 school year will be identified by March 1.  Funding by the State Legislature will determine the number of Empowerment schools.

39-1    The parties to this Agreement will agree whether new schools designated as Empowerment will retain existing staff or be vacated.

39-2    The Superintendent shall establish that there will be at least four Association Representatives on the CCSD Empowerment Design Team, which shall include the President of the Association or the President's designee, the Executive Director, one teacher from the Contract Maintenance Committee, and one other teacher.

39-3    One teacher mutually agreed upon by the parties will be assigned as an Empowerment liaison.  The Empowerment Liaison will be part of every School Empowerment Team.

39-4    Empowerment schools must adhere to the Negotiated Agreement.  A contract waiver under Article 38 must be sought and passed in order to obtain a waiver from a contract provision.

39-5    Teachers required to work over the seven-hour eleven-minute (7:11) work day as provided in Article 22-1 will be compensated at the teacher's daily rate of pay and such compensation will be PERS sensitive.  Teachers required to work over the 184 day contract as provided in Article 21-2 will be compensated at their contract rate of pay for each additional day above the 184 days and said payment will be PERS sensitive.

39-6    The School Empowerment Team will determine how to spend any monies provided by the Legislature to Empowerment Schools so long as it is consistent with the Negotiated Agreement or a contract waiver is obtained through Article 38.

39-7    Evaluations of teachers assigned to Empowerment Schools shall be used in a formative manner that will reflect teachers' performance along a continuum of skill levels.  If it is determined by the administrative team that a teacher is not compatible with the model established by the school, the principal may present such findings to the School Empowerment Team in a confidential forum, as prescribed in Article 39-8-1.

    39-7-1   The School Empowerment Team, in conjunction with the school principal, may implement a peer review model and may remove and replace a teacher deemed to be incompatible with the model established at the school.  The principal ultimately has the authority to make staffing decisions.  Any teacher so removed shall fall within the involuntary transfer provisions of Article 35 if identified in time to participate in a spring or fall surplus meeting.  Any teacher identified for removal either too late to secure a voluntary transfer or too late to participate in a surplus meeting shall be administratively reassigned by the Human Resources Division with vacancy options provided.

    39-7-2   Any teacher at any Empowerment School may choose to transfer out of the Empowerment school at any time.  Such transfer and/or administrative reassignment will occur within ten (10) work days.  Any teacher opting to transfer out shall be administratively reassigned by the Human Resources Division with vacancy options provided unless it occurs during the spring and fall surplus meetings teacher may participate in the provisions of Article 35.

    39-7-3   Any overpayment of additional compensation shall be reimbursed to the District by the employee pro-rata over the remaining paychecks of that school year.

39-8    The CCSD and the CCEA agree to pursue discussions regarding incentive pay for licensed personnel at the Empowerment Schools.

**ARTICLE 40**
**TERM OF AGREEMENT**

40-1    This Agreement shall become effective at the beginning of the 2018-2019 contracted school year and shall remain in effect until the beginning of the 2021-2022 contracted school year, and as limited by NRS 288.155, shall continue from year to year thereafter unless either of the parties shall give written notice to the other for school year 2021-2022 in the manner prescribed by the provisions of NRS 288 of a desire to change, amend or modify the Agreement and until a successor agreement is reached.

40-2    This Agreement shall immediately terminate in the event recognition is withdrawn and sustained after all avenues of appeal have been exhausted in accordance with NRS 288.


**ARTICLE 41**
**NEW ARTICLE**

41-1    Upon execution of this Agreement the parties agree to form working groups, which between the date of execution of this Agreement and October 11, 2013 shall meet at least four times and discuss the following topics:

a. Grievance back-log
b. Professional Development
c. Evaluations
d. Peer Assistance and Review
e. Special Education
f. Advanced Studies Certification 18 hour programs for Class E and F
g. Deletion of Article 39 – Empowerment Schools

To the extent that any of the topics listed in this article 41-1 (a)-(g) above are mandatory subjects of bargaining under NRS 288.150, either party may by written notice sent to the other party on or before February 1,2014, reopen negotiations for the limited purpose of bargaining over one or more of those topics listed in (a)-(g) above but only those of which are mandatory subjects of bargaining under NRS 288.150.  Upon reopening, the provisions of NRS 288.217 shall apply.  Discussions may be extended beyond February 1, 2014 only by the mutual consent of both parties.


**ARTICLE 42**
**NEW ARTICLE – COOPERATION AND ECONOMIC NEGOTIATIONS**

42-1    The parties agree that for the 2018-2019 contracted school year, the only increase in licensed employee compensation and benefits is the column movement provided in Article 26-2-8, unless additional funding is secured, either in 2019 Legislative Session, or through other means during the period of this agreement, including additional federal or local revenue streams that are not otherwise encumbered or restricted.

42-2    The intent of the parties is that for the 2019-2020 and 2020-2021 contracted school years, there shall be no increase in licensed employee compensation and benefits (i.e., step and column movements, health insurance contributions, and PERs) unless funding for the same is provided to CCSD by the 2019 legislative session, or through other means during the period of this agreement, including additional federal or local revenue streams that are not otherwise encumbered or restricted.

42-3    By January 31, 2019, CCSD shall first calculate what the Basic Minimum Funding ("BMF") is for a biennium budget and share that amount with CCEA. BMF shall be defined as the amount

of incremental per pupil funding needed for its 2019-2020 and 2020-2021 budgets, not inclusive of the amount of funding needed to pay for increases in employee compensation (steps and columns) and health benefits. The parties agree to review and discuss any modifications to the BMF and come to mutual agreement on any adjustments to the BMF. The adjustments may include, but are not limited to, funding reductions in the 2019 legislative session, new unfunded mandates, other unforeseen increases in costs, and/or retroactive increases in compensation and benefits for the 2018-2019 budget that must now be covered by CCSD's DSA funding from the 2019 legislative session.

42-4    By January 31, 2019, CCSD shall also calculate the incremental per pupil funding needed for its 2019-2020 and 2020-2021 budgets to pay for increases in employee compensation (steps and columns) and health benefits for employees and share that amount with CCEA. This amount shall be referred to as Increase in Employee Compensation ("IEC").

42-5    CCSD shall then add the two costs of BMF and IEC together, and that will be the amount referred to as the Incremental Per Pupil Funding ("IPPF") that CCSD shall present to the Nevada Department of Education and the 2019 Nevada Legislative Session. This amount would then become CCSD's proposal for additional funds needed to the State's guaranteed basic support amount that the DSA determines.

42-6    After a review and discussion, CCEA agrees to and shall accept the amounts as accurate and valid as outlined in 42-3, 42-4, and 42-5.

42-7    If during the course of the 2019 Nevada Legislative Session there are other means for additional funding for employee compensation (i.e. DSA traditional 'roll-ups', a 'wage cost index' is adopted, specific legislation, a categorical program specific to pay for increases in employee compensation, or there is a dedicated funding stream for additional funding for compensation), then the parties agree to jointly pursue those means to achieve additional funding for employee compensation.

42-8    The parties agree to work collaboratively during the 2019 legislative session to secure the IPPF as defined in 42-5. The parties agree that if the final funding secured falls short of the IPPF requested by CCSD to the State, then funds shall first be applied to meet the basic minimum funding needs of CCSD as outlined in 42-3.

42-9    Any DSA per pupil funding in excess of the BMF as defined under 42-3, shall be available for employee compensation and benefits for the 2019-2020 and 2020-2021 contracted school years.  This amount shall be referred to as the "Secured Funds."

42-10   CCEA's share of Secured Funds shall be 70% for each year of the term of this agreement.

42-11   CCEA agrees that it is only entitled to, and CCSD is only obligated to use CCEA's share for increases in compensation and benefits for licensed employees, unless the parties mutually agree to otherwise.

42-12   The parties shall begin negotiations over economics no later than May 1, 2019, and will continue negotiations upon the Nevada State Legislators adopting a two year budget for education.

42-13   The parties agree to meet and confer during the term of the 2018-2021 Negotiated Agreement over issues and matters that do not involve employee compensation or benefits.  Either party can serve notice to meet and confer during each school year of the 2018-2021 Negotiated Agreement.  Upon notice being served, the parties shall begin the meet and confer process within thirty (30) calendar days. If during the term of this Agreement CCSD reaches an agreement with any other bargaining unit of CCSD over issues and matters that do not involve

employee compensation or benefits, CCEA reserves the right to meet and confer about that same agreement.

42-14    The parties agree to consider "Pilot Projects" that advance student achievement, educator recruitment, and retention in high need areas.  These Pilot Projects, unless mutually agreed to by the parties, shall not alter the 2018-2021 Negotiated Agreement.

IN WITNESS WHEREOF, the parties have hereunto set their hands this 13th Day of September 2018.

**BOARD OF SCHOOL TRUSTEES FOR THE CLARK COUNTY SCHOOL DISTRICT**

DEANNA WRIGHT
President

JESUS F. JARA
Superintendent of Schools

LOLA BROOKS
Clerk

**FOR THE CLARK COUNTY EDUCATION ASSOCIATION**

DAN PRICE
Negotiations Committee Chair

VICTORIA COURTNEY
President

JOHN VELLARDITA
Executive-Director

### AMENDMENT TO NEGOTIATED AGREEMENT
### BETWEEN THE CLARK COUNTY SCHOOL DISTRICT
### AND THE CLARK COUNTY EDUCATION ASSOCIATION

This Amendment to Negotiated Agreement between the Clark County School District ("District"), a political subdivision of the State of Nevada and the Clark County Education Association ("Association") (or collectively referred to as "Parties") is made and entered into on the date of the last signature set forth below ("Effective Date").

WHEREAS, the Parties have entered into a negotiated agreement on September 13, 2018 ("Agreement") for the members to provide services to the District for the contracted years of 2018-2021;

WHEREAS, as set forth in section 42-12 of Agreement the Parties have diligently negotiated financial or economic issues after the 2019 Nevada Legislative session;

WHEREAS, the Parties have come to an agreement as to certain financial or economic issues and the parties seek to codify those agreements with this Addendum;

WHEREAS, the Parties will continue to negotiate non-economic terms (and as set forth below) while applying the financial or economic terms set forth in this Amendment starting after the Effective Date;

WHEREAS, the Parties agree that mutually deemed sufficient consideration exists for the exchange of obligations as set forth herein; and

THEREFORE, the Parties agree to make the following changes to Agreement for the entire term of the Agreement:

1.  Article 26-1(a) is hereby deleted in its entirety and replaced with the following language:

    "The following definition of terms shall apply to Article 26 and any other applicable portions of this Agreement:

    a.  Professional Salary Table (PST):  The salary table shall be effective on the first pay period of the 2019-2020 school year for each employee pursuant to their contract (Table 1)."

The Agreement is amended to delete in full the payment tables set forth on pages 46 through and including 47 of the Agreement and replacing them with the table (Table 1) set forth in Exhibit "A" attached hereto. The new payment tables reflect a 3% adjustment for every employee in the bargaining unit with an adjustment on the current salary tables effective the first pay period of the 2019-2020 school year for that employee pursuant to their contract.

2.  Add Article 26-22:  The Parties also agree that the District will pay a step increase in each year of the contract (2019-2020 and 2020-2021) for every eligible employee of the bargaining unit. Effective date of step increases shall be on the first pay period of each school year (2019-2020 and 2020-2021) for that employee pursuant to their contract.  First year employees starting the 2019-2020 and 2020-2021 school years are not eligible for a step increase as well as employees that fall under Article 26-8-1 and 26-8-2.

1

3. The Parties agree to delete section 28-3 in its entirety and replace it with the following language and modify 28-4 as set forth below:

28-3 "The District shall contribute to the Trust for each participating teacher.

Effective on August 1, 2019, the weighted health insurance monthly contribution per enrolled participant shall be increased by $23.54. During the 2019-2020 contract year, the District shall pay a monthly contribution of $612.01 per employee. Effective on July 1, 2020, the weighted health insurance contribution per enrolled participant shall be increased by an additional $24.48. During the 2020-2021 contract year, the District shall pay a monthly contribution of $636.49 per employee."

28-4 "Notwithstanding the provision of 28-3, for those employees who, through the Trust, elect to receive optional coverage (EPO or a successor option) in lieu of regular insurance coverage the District shall contribute seventy-five ($75.00) dollars per month per participating employee effective July 1, 2000, which constitutes the entire payment by the District to the Trust for all such employees.

The total payments by the District to the Trust under 28-3 and 28-4 shall be adjusted to a weighted average per employee for all participant employees as set forth in 28-3. Any dollar adjustment due to the Trust shall be paid by the District at the same time as the next regular monthly payment to the Trust. Any dollar adjustment due to the District shall be deducted from the next regular monthly payment to the Trust.

Effective July 1, 2017, an additional $4.60 per employee, per month, shall be added to the weighted health insurance contribution per enrolled participant of $583.87, specifically to be used by the Teachers Health Trust to reduce the per paycheck contribution by approximately one hundred dollars ($100.00) per month for those employees who, as of December 2015, were enrolled in the Platinum plan as "employee plus two (2) dependents."

4. The parties shall delete section 26-2-8 in its entirety and replace it with the following language: "The parties agree that the District will pay a column advancement for every employee who has completed their PGS requirements of meeting the 225 CUs per Article 26 of the CBA for each remaining year (2019-2020 and 2020-2021) of the contract. Effective date of the column advancement shall be the first pay period of each school year for that employee pursuant to their contract."

5. The parties will add 26-3-4 to the Agreement: "Upon ratification of the economic re-opener, the parties agree to form working groups to discuss a new Professional Growth System which includes a change to the system to make the PGS a researched based system that improves teacher practice and improves student achievement. The working groups shall be made up of an equal number of representatives from CCSD and CCEA not to exceed four (4) representatives from each side. The working groups shall meet to discuss the establishment of an effective Professional Growth System. The working groups shall make their recommendations to the negotiation representatives of CCEA and CCSD and the parties will agree to negotiate the new Professional Growth System with a goal of establishing a new Professional Growth System starting July 1, 2021."

6. The Parties agree to continue to negotiate in good faith the non-financial or non-economic terms of the Agreement and when such negotiations are completed, this Amendment will be incorporated into modified Agreement. Any term or condition modified herein shall take effect on the Effective Date and all unmodified terms of the Agreement shall remain in full force and effect.

**BOARD OF SCHOOL TRUSTEES FOR THE CLARK COUNTY SCHOOL DISTRICT**

LOLA BROOKS
President, CCSD Board of Trustees
Date: 12/4/19

CHRIS GARVEY
Clerk, CCSD Board of Trustees
Date: 12/04/19

DR. JESUS F. JARA
Superintendent of Schools
Date: 11-21-19

**FOR THE CLARK COUNTY EDUCATION ASSOCIATION**

DAN PRICE
Negotiations Committee Chair
Date: 9/12/19

VICTORIA COURTNEY
President
Date: 9.12.19

JOHN VELLARDITA
Executive Director
Date: 9-11-19

3

# CLARK COUNTY SCHOOL DISTRICT
## TABLE TWO (2): LICENSED PROFESSIONAL SALARY TABLE
### EFFECTIVE JULY 1, 2019

Salary increase of 3.00% calculated after previous PERS increase of 1.25% (Employee burden of 0.625%)

| STEP / COLUMN | I | II | III | IV | V | VI | VII | VIII |
|---|---|---|---|---|---|---|---|---|
| A | 41,863 | 47,394 | 52,924 | 58,455 | 63,985 | 69,515 | 75,045 | 80,575 |
| B | 43,247 | 48,777 | 54,307 | 59,837 | 65,367 | 70,897 | 76,427 | 81,958 |
| C | 44,628 | 50,159 | 55,689 | 61,219 | 66,749 | 72,280 | 77,810 | 83,340 |
| D | 46,011 | 51,541 | 57,072 | 62,602 | 68,132 | 73,663 | 79,193 | 84,723 |
| E | 47,394 | 52,924 | 58,455 | 63,985 | 69,515 | 75,045 | 80,575 | 86,105 |
| F | 48,777 | 54,307 | 59,837 | 65,367 | 70,897 | 76,427 | 81,958 | 87,488 |
| G | 50,159 | 55,689 | 61,219 | 66,749 | 72,280 | 77,810 | 83,340 | 88,870 |
| H | 51,541 | 57,072 | 62,602 | 68,132 | 73,663 | 79,193 | 84,723 | 90,253 |
| I | 52,924 | 58,455 | 63,985 | 69,515 | 75,045 | 80,575 | 86,105 | 91,635 |
| J | 54,307 | 59,837 | 65,367 | 70,897 | 76,427 | 81,958 | 87,488 | 93,018 |

Licensed employees completing the following years of District service will be eligible for longevity compensation for which PERS contributions will be made:

**Longevity Table**

| Years of Service >= | Amount |
|---|---|
| - | $ - |
| 10 | $ 750 |
| 16 | $ 1,000 |
| 21 | $ 1,500 |
| 26 | $ 2,000 |